IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

CITYNET, LLC, on behalf of
the United States of America,

    Plaintiff/Relator,

v.                                                  Civil Action No. 2:14-15947
                                                  Judge John T. Copenhaver

FRONTIER WEST VIRGINIA INC.,
a West Virginia Corporation,
and KENNETH ARNDT, individually,
and DANA WALDO, individually,
and MARK McKENZIE, individually,
and JIMMY GIANATO, individually,
and GALE GIVEN, individually,

    Defendants.

**UNITED STATES OF AMERICA'S RESPONSE TO
THE STATE OF WEST VIRGINIA'S MOTION TO INTERVENE**

The United States respectfully submits this response to the State of West Virginia's ("State") Motion to Intervene, ECF No. 184, and accompanying Memorandum in Support thereof, ECF No. 185 (collectively "the State's Motion"). For the reasons set forth below, the Court should not lift the stay in this matter to accept filing of the State's Motion. As grounds for the Motion, the State appears concerned that the United States may stand to gain a windfall, should the Relator prevail in this matter and should the Court award treble damages and penalties pursuant to the False Claims Act ("FCA"). Specifically, the State is concerned that an FCA award concerning the same unallowable costs that the State has already repaid the United States Department of Commerce, pursuant to a separate administrative process, would result in a windfall to the United States if the United States is also awarded treble damages for them

pursuant to the FCA here. To address that concern, the United States clarifies and acknowledges that it is entitled to collect treble damages and penalties under the FCA for false claims paid by the federal government, but not more than that. Accordingly, should Relator secure an FCA judgment in this matter for the very same unallowable costs for which the Department of Commerce has already been repaid pursuant to the separate administrative process, defendants are likely to claim a partial offset to that judgment taking this administrative repayment into account. Put another way, if the Department of Commerce has already been paid what would be considered "single damages" for a locus of unallowable costs that later become the basis for an FCA judgment here, the United States does not stand to collect more than treble damages (plus applicable penalties) for them in total. Accordingly, the core concern of the State's Motion—and grounds for its request—will not come to fruition.[1] Moreover, given that there has been no determination of liability in this FCA matter, predicting the specifics of a judgment or what type of offset may be appropriate is entirely premature. Indeed, to date all defendants maintain that they have no FCA liability in this matter.

To be clear, the United States takes no position on whether the State would have a separate cause of action against any defendant (or any other person or entity) concerning conduct leading to the submission of the unallowable costs for reimbursement under the federal grant at issue here. But the place for adjudicating such a dispute is a separate action that does not involve

---

[1] As stated in a recent filing and to reiterate for clarity's sake here: the United States also acknowledges that the fact that defendants may be entitled to an offset against the judgment in this case would not (standing alone) impact the amount of the relator share award owed to Citynet under the FCA, if Citynet prevails in establishing FCA liability as to those very same unallowable costs. In other words, whatever percentage of the FCA judgment Citynet would be entitled to should apply to the entire FCA judgment that Citynet secures if it prevails—even if some of that judgment may be subject to an offset as discussed above. *See* United States of America's Response in Opposition to Citynet's Motion to Lift General Stay ("U.S. Response to Citynet's Motion") at 2, n.2. ECF No. 178.

the United States.  As discussed below, the FCA and controlling Fourth Circuit precedent are explicit on this point: third parties, such as the State here, cannot intervene in *qui tam* actions to assert non-FCA claims.  Moreover, while the State's Motion does not appear to seek to intervene to assert a claim against the United States, that, too, would be barred here by the doctrine of sovereign immunity.

Accordingly, the Court should not lift the stay to deem the State's Motion filed because doing so would be futile, as the State's request to intervene must be denied.  For the same reasons, if the Court does deem the State's Motion filed, the United States will oppose it and respectfully reserves the right to make these and all other relevant arguments at the appropriate time.

## BACKGROUND

This *qui tam* matter was filed on behalf of the United States by Citynet LLC ("Relator") pursuant to the FCA, which allows private citizens to bring civil actions on behalf of the United States.  31 U.S.C. § 3730(b).  Citynet alleges in its First Amended *Qui Tam* Complaint, ECF No. 30, that defendants, including the telecommunications company Frontier West Virginia, Inc. ("Frontier"), knowingly caused the submission of false claims to the federal government in connection with a federal grant awarded by the Department of Commerce to the State.  As relevant here, Citynet alleges that the State subcontracted a portion of the grant to Frontier, who then, *inter alia*, knowingly billed the State for costs not allowable under the grant which, in turn, caused the State to seek and receive reimbursement for these same unallowable costs from the federal government.

The United States notified the Court of its election to decline to intervene in this matter on June 17, 2016.  ECF No. 27.  Since that time, Relator has continued to litigate this matter,

which is still pending and currently in discovery. There has been no trial, judgment, or other finding of liability as to Frontier or any defendant in this matter to date. In fact, the matter is currently stayed pursuant to the Court's July 9, 2019, order directing that "proceedings in this case be, and hereby are, stayed generally until further order of the court" in light of an interlocutory appeal by individual, state-employee defendants regarding the issue of qualified immunity. ECF No. 176 at 2. To the United States' knowledge, all defendants deny that they are liable under the FCA.

During the pendency of this litigation, the Department of Commerce contacted the State and—pursuant to a separate administrative process which concluded in May 2019—determined that approximately $4.9 million in certain charges that the State billed to the federal government as part of the grant at issue were actually unallowable under the grant rules. *See* State Motion at 2; *see also* State Motion Ex. A – D. The State agreed to repay this amount to the Department of Commerce to resolve this administrative issue and reconcile charges made to the grant. *Id*.

That administrative matter and accompanying repayment is wholly separate from this FCA matter. For example, the State is the subject of that administrative matter but is not a defendant, and cannot be, in this declined *qui tam* action. *See Vermont Agency of Natural Resources v. U.S. ex rel. Stevens*, 529 U.S. 765 (2000); *see* U.S. Response to Citynet's Motion, ECF No. 178, at 2-3. Moreover, the administrative matter does not require establishing the same elements as Relator must establish to prevail under the FCA. In essence, the administrative matter is just that—administrative—while this FCA matter is akin to a fraud claim. In particular, the FCA requires a showing of scienter, which is not a consideration under the administrative process at issue and has no bearing on whether the costs at issue were allowable or not. *Compare* 31 U.S.C. § 3729(a) (requiring a defendant to act "knowingly" as a prerequisite for

4

FCA liability) and *id.* at § 3729(b)(1) (defining "knowingly" to mean actual knowledge or deliberate ignorance or reckless disregard of the truth or falsity of information) *with* State Motion Ex. A at 2-5 (citing administrative authorities that do not require a showing of scienter as the basis for determining that the costs in question were unallowable) and *id*. at Ex. B at 5-6 (same). Thus, whether the State was obligated to repay the Department of Commerce pursuant to the administrative process is an entirely separate question from whether any defendant has FCA liability here. Conversely, the establishment of FCA liability against any defendant here does not alter any obligation of the grant recipient—the State—to the federal government under that same administrative process. The State acknowledges as much in its motion, that it "does not question the statutory and regulatory basis for the underlying [administrative demand for repayment]" concerning the costs at issue. ECF No. 185 at 5.

On November 8, 2019, the State filed the instant Motion to Intervene in this *qui tam* matter pursuant to Federal Rule of Civil Procedure 24, seeking to intervene to "assert an equitable claim" should a particular outcome of this FCA litigation occur. ECF No. 184 at 1. Specifically, the State seeks to intervene "to be in [a] position to equitably recoup the amounts already paid to the federal government should the federal government stand to receive similar payment based on the same underlying costs." ECF No. 185 at 3. In particular, the State appears to seek an equitable subrogation against defendants under West Virginia state law whereby a defendant found liable here, for causing the submission of the same unallowable costs that were subject to the State's administrative repayment, would be required to reimburse the State for that repayment. ECF No. 185 at 5. As grounds for this request, the State argues that—otherwise— the federal government could enjoy a windfall by recovering a full treble damages plus penalties here for the exact same unallowable costs that the State has already repaid the Department of

5

Commerce. *See* ECF No. at 185 at 6 (asserting that the federal government could "enjoy a double recovery" absent granting the State's motion); *see also id.* at 7-8. However, the United States does not stand to receive such a duplicative recovery here. Therefore, in addition to other reasons discussed throughout this Response, the State's request is not pertinent, and the Court should neither lift the stay to consider it nor grant it.

## ARGUMENT

The Court should not lift the stay to entertain the State's Motion because it presupposes that the United States may receive a windfall as a result of this litigation, but, as discussed throughout this Response, it will not. Further, the State's Motion admits that the scenario it is concerned about has not happened; thus its motion is also premature. Moreover, the Court should not lift the stay to deem the State's Motion filed because it would be futile to do so. The FCA and controlling Fourth Circuit precedent explicitly bar anyone from intervening in an FCA action *except* the United States, for any reason. While the United States takes no position on whether the State has a cause of action against any defendant here (or any other party) regarding conduct related to the unallowable costs for which the State has agreed to repay the Department of Commerce, or the merits of such a cause of action, the State must pursue any such action separately against that party.

**I.     THE UNITED STATES WILL NOT COLLECT A WINDFALL HERE**

The FCA specifies that a person who violates the FCA is liable for a civil penalty prescribed by statute "plus 3 times the amount of damages which the Government sustains because of the act of that person." 31 U.S.C. § 3729(a). As discussed above, the United States is entitled to receive treble damages plus penalties for violations of the FCA, but not more than that. In the event that Relator prevails in this FCA litigation and establishes FCA liability

against one or more defendants concerning some (or all) of the exact same unallowable costs that were the subject of the State's administrative repayment to the Department of Commerce, any collection of the resulting FCA judgment may need to be partially offset to account for this. Although the specifics of what FCA liability, if any, Relator will establish remains to be seen, for clarity's sake, the United States will neither seek nor receive a windfall on account of this FCA litigation. Thus, the core concern and asserted legal basis underlying the State's Motion will not come to pass, thereby making the State's Motion unnecessary.

## II. THE STATE'S MOTION IS PREMATURE

Even absent the United States' clarification that it will not receive a windfall, the State's Motion is also premature and not pertinent to this proceeding given its current posture—where the Relator has not established FCA liability against any defendant and, accordingly, the Court has not issued a judgment and the United States has not received any payment as a result of this matter. In short, the State's Motion presupposes a very particular outcome of this matter which has not yet occurred, and which may never occur, but asks the Court to act as if it has or is about to. The Court should decline this request.

Where a follow-on claim presupposes a particular outcome of another pending matter, it stands to reason that the other pending matter must resolve *first* before entertaining the follow-on claim. For example, courts routinely hold as much in the context of malicious prosecution counterclaims filed in response to pending criminal proceedings, because the pertinence of such counterclaims is dependent upon the defendant prevailing in the main action first. *See generally*, *e.g.*, *Murphy v. Snedecker*, No. 7:07CV00273, 2007 WL 2220556, at *1 n.2 (W.D. Va. Aug. 1, 2007) (*pro se* criminal defendant's complaint under FTCA for, *inter alia*, malicious prosecution was premature where his conviction was pending on appeal); *Eddy v. Bonded Loan Office*, No.

3:04-808, 2006 WL 981995, at *4 (D.S.C. Apr. 12, 2006) (dismissing *pro se* criminal defendant's consolidated actions, concluding "[e]ven if considered minimally sufficient to state a cause of action for malicious prosecution based on plaintiff's pending criminal case, the complaint is premature"); *Harris v. Steinem*, 571 F.2d 119, 124 (2d Cir. 1978) (noting that it is well settled that a claim for malicious prosecution, "which arises out of the bringing of the main action, generally cannot be asserted either as a compulsory or a permissive counterclaim, since such a claim is premature prior to the determination of the main action").

      Here, the State explicitly takes no position in the pending FCA case and acknowledges that there has been no determination of FCA liability against any defendant and that the United States has received no FCA recovery to date. ECF No. 185 at 2-3. The State itself also agrees "[n]or has time been of the essence, as this matter presently rests under an indefinite stay" pending the outcome of the interlocutory appeal. ECF No. 185 at 4. Lifting the stay to consider this motion now, or at any time before FCA liability has been established or an FCA judgment has been issued, is unwarranted and runs afoul of the basic tenets of judicial economy. The Court should not do so.

### III. LIFTING THE STAY TO ACCEPT FILING OF THE MOTION WOULD BE FUTILE

      Additionally, the Court should not lift the stay to accept the State's Motion as it would be futile to do so: intervention of any party but the United States in this *qui tam* action is prohibited by the FCA and Fourth Circuit precedent. The United States reiterates that it takes no position on whether the State has any claim against Frontier or other defendants concerning their conduct in executing certain functions under the federal grant at issue, and the United States takes no position regarding the State pursuing such a claim (if it exists) in a separate proceeding. But the FCA and controlling Fourth Circuit precedent explicitly prohibit any party except the United

States from intervening in this *qui tam* matter and, thus, bar the State's request to intervene to pursue an equitable claim against any defendant here. The merits of such a claim would likely involve questions of law and fact unrelated to the United States and outside the scope of this *qui tam* matter, which provides a further practical justification for this legal prohibition.

The FCA provides that the United States, and only the United States, may intervene in *qui tam* actions. 31 U.S.C. § 3730(b)(4)-(5). According to the plain language of the FCA, "[w]hen a person brings an action under [the FCA], no person other than the Government may intervene" in it. *Id.* at § 3730(b)(5). As the Fourth Circuit has recognized, "[t]his provision states without qualification that persons other than the government may not intervene in *qui tam* actions. By drafting the statute in such unequivocal language, Congress made the strongest possible statement against private party intervention in *qui tam* suits." *United States ex rel. LaCorte v. Wheeler*, 185 F.3d 188, 191 (4th Cir. 1999) (denying motion to intervene in *qui tam* FCA suit); *see Webster v. United States*, 217 F.3d 843, 2000 WL 962249 (4th Cir. 2000) (same). Indeed, "[t]he only way to preserve the balance that Congress struck is to apply the unqualified congressional mandate of section 3730(b)(5) to bar all would-be intervenors other than the government." *LaCorte*, 185 F.3d. at 191-192. Here, Citynet brought this pending *qui tam* matter, and no person or entity except the United States may intervene in it. Thus, lifting the stay to accept filing of the State's Motion would be futile because it must be denied.[2]

---

[2] Courts also hold that even FCA defendants are prohibited from inserting counterclaims for contribution or indemnification against co-defendants or third parties. *See e.g.*, *Mortgages, Inc. v. U.S. Dist. Court for Dist. Of Nev. (Las Vegas)*, 934 F.2d 209, 214 (9th Cir. 2001) ("[T]here is no basis in the FCA or federal common law to provide a right to contribution or indemnity in a FCA action" and "there can be no right to assert state law counterclaims that, if prevailed on, would end in the same result."); *United States v. Nardone*, 782 F. Supp. 996, 999 (M.D. Pa. 1990) ("[T]he defendant is precluded from seeking indemnification as a matter of law" in a FCA case). This further shows that the State—a non-party here—may not interject itself in these proceedings to pursue an equitable claim which has nothing to do with the FCA.

To be clear, it appears to undersigned counsel for the United States that the State is seeking to intervene in this matter to pursue an equitable claim against a defendant, not to assert a claim against the United States.[3] But for avoidance of doubt, to the extent the State does seek to intervene to pursue a claim against the United States here, this would be futile for all the reasons discussed throughout this Response and because it would be barred by the doctrine of sovereign immunity. Because addressing this issue in detail appears unnecessary in the context of the State's Motion, the United States reserves the right to address it more fully in a separate response, if necessary. For the time being, the United States respectfully submits that it is well established that, as a sovereign, the United States is immune from suit. *United States v. Testan*, 424 U.S. 392, 398 (1976). Congress defines the conditions under which litigation against the United States is permitted. *Kendall v. United States*, 107 U.S. 123, 125 (1883). The United States is immune from liability and cannot be sued unless it consents to be sued. *Gould v. U.S. Dept. of Health & Human Services*, 905 F.2d 738, 741 (4th Cir. 1990) (quoting *United States v. Sherwood*, 312 U.S. 584, 586 (1941)). Moreover, "a waiver of sovereign immunity must be *express* in a statute" and "[t]here is no express waiver of sovereign immunity in the FCA." *Shaw v. United States*, 213 F.3d 545, 548-49 (10th Cir. 2000) (emphasis in original).

Absent an express waiver, a court lacks jurisdiction to grant relief against the United States. *Id.; Sherwood*, 312 U.S. at 587-88; *United States v. King*, 395 U.S. 1 (1969). And, "[i]t is a fundamental command of the Appropriations Clause, U.S. Const. art. I, § 9, cl. 7, that only Congress has the power to define the availability of relief against the government and that 'judicial use of the equitable doctrine[s] ... cannot grant [a claimant] a money remedy that Congress has not authorized.'" *United Services Auto. Ass'n. v. United States*, 105 F.3d 185, 188

---

[3] Indeed, the State explicitly does not contest the payment it has already made to the United States pursuant to the administrative process. ECF No. 185 at 5.

10

(4th Cir. 1997) (quoting *Office of Personnel Management v. Richmond*, 496 U.S. 414, 426 (1990)); *see Shaw* 213 F.3d 545 at 549 n. 7 (denying relator's motion seeking to order the United States to initiate certain collection procedures against a defendant on relator's behalf, because no such relief can be ordered absent a waiver of sovereign immunity).

     For all of these reasons, and the other reasons discussed throughout this Response, the Court should not lift the stay to accept the State's Motion because it will be futile to do so. *See also Friends of Dereef Park v. National Park Service,* No. 2:13-cv-03453, 2015 WL 12807782, \*6 (D.S.C. Apr. 13, 2015) (denying motion to amend because proposed amendment to add counterclaim and cross claim against the federal defendants was futile because it would be barred by the doctrine of sovereign immunity). For these same reasons, if the Court accepts filing of the State's Motion, the Court should deny it without further briefing; otherwise, the United States will oppose it and hereby respectfully reserves all rights to make these and other applicable arguments in support of such opposition at the appropriate time.

Respectfully submitted,

**JOSEPH H. HUNT**
**Assistant Attorney General**

**MICHAEL B. STUART**
**United States Attorney**

**s/ Jennifer M. Mankins**
JENNIFER M. MANKINS (WV Bar No. 9959)
Assistant United States Attorney
United States Attorney's Office
300 Virginia Street East, Room 4000
Charleston, WV 25301
P: 304-345-2200
F: 304-347-5443
E: jennifer.mankins@usdoj.gov

ANDY J. MAO
PATRICIA L. HANOWER
AUGUSTINE M. RIPA
Civil Division, Fraud Section
Unites States Department of Justice
P.O. Box 261
Ben Franklin Station
Washington, DC 20044
P: 202-305-4033
E: augustine.m.ripa@usdoj.gov

*Attorneys for the United States of America*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

CITYNET, LLC, on behalf of
the United States of America,

    Plaintiff/Relator,

v.                                                               Civil Action No. 2:14-15947
                                                              Judge John T. Copenhaver

FRONTIER WEST VIRGINIA INC.,
a West Virginia Corporation,
and KENNETH ARNDT, individually,
and DANA WALDO, individually,
and MARK McKENZIE, individually,
and JIMMY GIANATO, individually,
and GALE GIVEN, individually,

    Defendants.

## CERTIFICATE OF SERVICE

      I hereby certify that on November 22, 2019, I electronically filed the foregoing ***United States of America's Response to the State of West Virginia's Motion to Intervene*** with the Clerk of the Court using the CM/ECF system which will send notification to the following CM/ECF participants:

                Benjamin L. Bailey
                Rebecca Pomeroy
                Bailey & Glasser, LLP
                209 Capitol Street
                Charleston, WV 25301-1386
                bbailey@baileyglasser.com
                bpomeroy@baileyglasser.com

                Nicholas S. Preservati
                Spilman, Thomas & Battle, PLLC
                P. O. Box 273
                Charleston, WV 25321-0273
                npreservati@spilmanlaw.com
                ***Counsel for Plaintiff/Relator Citynet, LLC***

J. David Fenwick
Benjamin B. Ware
Lucas R. White
Goodwin & Goodwin, LLP
300 Summers Street, Suite 1500
Charleston, WV 25328-2107
jdf@goodwingoodwin.com
bbw@goodwingoodwin.com
lrw@goodwingoodwin.com

Charles W. McIntyre , Jr.
Elizabeth A. Hutson
McGuire Woods LLP
2001 K Street NW, Suite 400
Washington, DC 20006-1040
cmcintyre@mcguirewoods.com
ehutson@mcguirewoods.com

C. Simon Davidson
McGuire Woods LLP
310 Fourth Street, NE, Suite 300
Charlottesville, VA 22902
cdavidson@mcguirewoods.com

Jeremy S. Byrum
McGuire Woods LLP
800 East Canal Street
Richmond, VA 23219
jbyrum@mcguirewoods.com
***Counsel for Defendants Frontier West Virginia Inc., Kenneth Arndt, Dana Waldo, and Mark McKenzie***


Gary E. Pullin
Stephen M. Fowler
Geoffrey A. Cullop
Christopher S. Ross
Pullin, Fowler, Flanagan, Brown & Poe, PLLC
901 Quarrier Street
Charleston, WV 25301
gpullin@pffwv.com
sfowler@pffwv.com
gcullop@pffwv.com
cross@pffwv.com
***Counsel for Defendants Jimmy Gianato and Gale Given***

        Douglas P. Buffington II
        Curtis R. A. Capehart
        West Virginia Attorney General Office
        State Capitol, Bldg. 1, Rm E-26
        1900 Kanawha Blvd. East
        Charleston, WV 25305-0220
        Doug.P.Buffington@wvago.gov
        Curtis.R.A.Capehart@wvago.gov
        *Counsel for State of West Virginia*

                            **s/ Jennifer M. Mankins**
                            JENNIFER M. MANKINS (WV Bar No. 9959)
                            Assistant United States Attorney
                            United States Attorney's Office
                            300 Virginia Street East, Room 4000
                            Charleston, WV  25301
                            P: 304-345-2200
                            F: 304-347-5443
                            E: jennifer.mankins@usdoj.gov
                            *Counsel for United States of America*