UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA

**CITYNET, LLC,** on behalf of
the United States of America,

      *Plaintiff/Relator*,

v.

                                    **Civil Action No. 2:14-cv-15947**
                                   **(Honorable John T. Copenhaver, Jr.)**

**FRONTIER WEST VIRGINIA INC.,**
a West Virginia corporation, **KENNETH
ARNDT,** individually, **DANA WALDO,**
individually, **MARK McKENZIE,**
individually, **JIMMY GIANATO,** individually,
and **GALE GIVEN,** individually,

      *Defendants*.

---

**REPLY TO UNITED STATES OF AMERICA'S RESPONSE TO THE
STATE OF WEST VIRGINIA'S MOTION TO INTERVENE**

---

The State of West Virginia (the "State"), by and through its Attorney General, Patrick Morrisey, respectfully submits this Reply to the United States of America's Response to the State of West Virginia's Motion to Intervene (the "Reply"). As explained herein, the objections presented by the United States of America's Response to the State of West Virginia's Motion to Intervene (the "Response"; Doc. 187) lack sufficient weight and applicability to overcome the State's request to intervene. Consequently, for the reasons set forth in the Motion to Intervene (the "Motion"; Doc. 184), the Memorandum in Support of Motion to Intervene (the "Memorandum"; Doc. 185), and the discussion below, the Motion should be accepted, considered, and ultimately granted.

**ARGUMENT**

The background of this matter and of relevance to the Motion has been well-briefed by the Motion and responses; this Reply dispenses with any further recitation in the interests of brevity. The Response presents categorical objections, which are addressed here in the order presented by the Response.

## I. CONCERNS RELATIVE TO POTENTIAL RECOVERY AS AFFECTS STATE'S EQUITABLE CLAIM AND PREMATURITY

The core concern of the State's Motion is that this proceeding will determine whether there was fraud relative to the Grant and that, in the event that fraud is proven relative to any party, that party is the proper party to bear costs that, at present, have been borne by the State's taxpayers. The Response's clarification and acknowledgement of the federal government's extent of available recovery under the False Claims Act, 31 U.S.C. §§ 3799-3733 ("FCA") is appreciated. The statute does delineate the maximum extent of damages to be collected thereunder. However, the unknown and uncertain future outcomes here are central to the State's Motion, and this uncertainty is reflected in the Response. While it asserts that any concern for surplus recovery – or presumably any other outcome that would impact the State's claim – "will not come to fruition" Resp., p. 2 (Doc. 187), the Response goes on to counsel that "predicting the specifics of a judgment or what type of offset may be appropriate is entirely premature." Resp., p. 2 (Doc. 187). Simply stated, no party can predict the specifics and what type of offset, if any, will be appropriate until the matter has been largely concluded. This is one of the concerns that elicited the filing of the Motion now.

The State acknowledges the potential nature of its claim, but the State's requested inclusion in this matter is an effort to present the issue now (rather than later) to safeguard such claim against other calls of untimeliness. See Fed. R. Civ. P. 24 (requiring the filing of a "timely motion" for any intervention). Should the State have waited to raise the issue of its equitable claim until after an ultimate determination of FCA liability – as the Response suggests would be more appropriate

– then there likely would have been objections invoking delinquency rather than prematurity.  The propriety of intervention also requires considering whether an outside party's issue would receive attention without that party's involvement.  See also, Scott v. Bond, 734 F. App'x 188, 191 (4th Cir. 2018) (identifying "inadequate representation of the interest by the existing parties" as a requirement for intervention as of right).  This contrasts with the Response's examples of follow-on claims.  Resp., p. 7-8 (Doc. 187).  Claims of malicious prosecution necessarily result from and continue to involve the same parties as the initial proceeding.  That is dissimilar from the instant circumstance where, as detailed in the Memorandum, no party to this matter at present adequately represents or seeks to protect the State's interest.

As stated in the Memorandum and as noted in the Response, the State takes no position regarding the claims and allegations presented by Plaintiff/Relator, Citynet, LLC ("Citynet").  The State's goal is to protect its interests on behalf of its citizens, not to disrupt the interests of Citynet or the United States.  The State agrees that it would not be necessary to address the Motion during the pendency of the current interlocutory appeal regarding qualified immunity or, potentially, before a judgment or other resolution regarding FCA liability is imminent.  However, any such resolution should not be rendered final until such time that the State's interests have been fully considered.  To the extent that the court agrees that the State's requested intervention is premature, the State requests that the court not act on the Motion until such point that the court deems appropriate.

## II.    REGARDING ASSERTION THAT ACCEPTING THE MOTION WOULD BE FUTILE

The State's Motion is not futile.  The Response argues that the plain language of 31 U.S.C. Section 3730(b)(5) prohibits any intervention in a *qui tam* action under the FCA.  Resp., p. 9 (Doc.

187).  Accordingly, the United States asserts that even if this Court lifts the stay, the State's Motion must ultimately be rejected.  But this conclusion is not demanded by Section 3730(b)(5)'s text.

Admittedly, when a private party brings a *qui tam* action under the FCA, Section 3730(b)(4)-(5) permits the United States to intervene, but it prohibits other "person[s]" from doing the same. 31 U.S.C. § 3730(b)(5).  Applying this subsection, the Court of Appeals of the Fourth Circuit recognized an "unequivocal" bar to "*private party* intervention in *qui tam* suits" brought under the FCA.  United States ex rel. LaCorte v. Wagner, 185 F.3d 188, 191 (4th Cir. 1999) (emphasis added).

The State, however, is not a "person" or a "private party" under the FCA.  Congress normally uses the word "person" to broadly encompass any natural and artificial entities.  1 U.S.C. § 1.  But there is a "longstanding interpretive presumption that 'person' does not include" state sovereigns.  Vt. Agency of Nat'l Res. v. United States ex rel. Stevens, 529 U.S. 765, 780 & n.9 (2000).  And this presumption "may be disregarded only upon some affirmative showing of statutory intent to the contrary."  Id. at 781.

This presumption is "particularly applicable" where a contrary interpretation of the term "person" would "subject[] the States" to new liability.  Will v. Mich. Dep't of State Police, 491 U.S. 58, 64 (1989).  But it also applies where a "statute imposes a burden or limitation."  Wilson v. Omaha Indian Tribe, 442 U.S. 653, 667 (1979) (finding heightened burden for "white persons" in Indian property litigation inapplicable to sovereign States).  Because of this, courts "ordinarily construe" statutes "employing the phrase" "person" to exclude the States.  Wilson, 442 U.S. at 667 (quoting United States v. Cooper Corp., 312 U.S. 600, 604 (1979)).

The FCA is no exception.  As the United States admits, the State cannot be sued in a *qui tam* action.  Resp., p. 4 (Doc. 187).  This is because the FCA only subjects "person[s]" to liability,

4

Vt. Agency, 529 U.S. at 780 (quoting 31 U.S.C. § 3729(a)), and Congress did not provide the "requisite affirmative indication" that the term – as used in the FCA – applies to the States.  Vt. Agency, 529 U.S. at 787.  Instead, "various features of the FCA", id. at 787, indicate that the FCA "does not subject the States (or state agency) to liability" in *qui tam* actions.  Id. at 788.  Here "normal rules of statutory construction" indicate that Congress intended these "identical words" to "have the same meaning," Gustafson v. Alloyd Co., Inc., 513 U.S. 561, 570 (1995), making § 3730(b)(5)'s prohibition against "private party intervention" inapplicable to the State's Motion.[1]

Lastly, the State appreciates the United States' recognition that the State is seeking to pursue its equitable claim against Frontier and any defendant found to have FCA liability.  As a co-equal sovereign, the State full-well acknowledges the weight of sovereign immunity and presents no claim against the United States herein.

*[Remainder of page left blank intentionally]*

---

[1] Notably, the precedent relied on by the United States relates to private party intervention in FCA actions and not State intervention. See, e.g., Resp., p. 9 (Doc. 187) (relying on precedent prohibiting "*private party* intervention in *qui tam* suits" (quoting LaCorte, 185 F.3d at 191)). The United States also relies on Webster v. United States, 217 F.3d 843, 2000 WL 962249 (4th Cir. 2000) (per curiam).  But this precedent is equally inapplicable to the States' Motion.  In Webster, an employee of the federal government voluntarily dismissed a *qui tam* action she brought against several coworkers. Id. at *1.  Following dismissal, she attempted to intervene in a pending FCA suit brought by the United States against the same individuals. Id. The district court denied her motion, and on appeal, the Fourth Circuit affirmed because § 3730(b)(5) plainly bars "private party intervention" in an FCA suit.  Webster, 2000 WL 962249, *2.  Additionally, the United States argues that precedent which prohibits FCA defendants from obtaining contribution or indemnification further undermines the State's Motion.  Resp., p. 9 n.2 (Doc. 187).  Again, these cases related to the rights of private parties, Mortgages, Inc. v. U.S. Dist. Court for Dist. Of Nev. (Las Vegas), 934 F.2d 209, 210 (9th Cir. 1991) (per curiam); United States v. Nardone, 782 F. Sup. 996, 997 (M.D. Pa. 1990), and accordingly, are distinguishable from the issues raised in the State's Motion.  Moreover, the rationale underpinning the prohibition against indemnification and contribution is inapposite.  Mortgages, in part, was based on the Ninth Circuit's recognition that the FCA was designed to "deter future fraudulent claims" and not to "ameliorate the liability of wrongdoers" who defrauded the United States.  Mortgages, 934 F.2d at 213.  Here, the State is not, and as the United States admits, cannot be liable under the FCA. Resp., p. 4 (Doc. 187).  Therefore, the rationale of precluding a wrongdoer's indemnification under the FCA is wholly inapplicable to the State's equitable interest against a party found liable under the FCA.

Respectfully submitted,


STATE OF WEST VIRGINIA
*ex rel.* PATRICK MORRISEY,
ATTORNEY GENERAL


/s/ Curtis R. A. Capehart
Douglas P. Buffington II (WVSB #8157)
  *Senior Deputy Attorney General*
Curtis R. A. Capehart (WVSB #9876)
  *Deputy Attorney General*
West Virginia Attorney General Office
State Capitol, Bldg 1, Rm E-26
1900 Kanawha Blvd. East
Charleston, WV 25305-0220
Telephone:  (304) 558-2021
Facsimile:  (304) 558-0140
Doug.P.Buffington@wvago.gov
Curtis.R.A.Capehart@wvago.gov

*Counsel for State of West Virginia*

DATE: November 27, 2019

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF WEST VIRGINIA**

**CITYNET, LLC,** on behalf of
the United States of America,

     *Plaintiff/Relator*,

v.

                                       **Civil Action No. 2:14-cv-15947**
                                  **(Honorable John T. Copenhaver, Jr.)**

**FRONTIER WEST VIRGINIA INC.,**
a West Virginia corporation, **KENNETH
ARNDT,** individually, **DANA WALDO,**
individually, **MARK McKENZIE,**
individually, **JIMMY GIANATO,** individually,
and **GALE GIVEN,** individually,

     *Defendants*.

**CERTIFICATE OF SERVICE**

     I, Curtis R. A. Capehart, hereby certify that on this 27th day of November, 2019, I filed the

foregoing "***Reply to United States of America's Response to the State of West Virginia's Motion

to Intervene***" using the Court's CM/ECF system and/or United States Postal Service to be served

upon the following:

| | |
|---|---|
| Benjamin L. Bailey<br>Bailey & Glasser<br>209 Capitol Street<br>Charleston, WV 25301-1386<br>bbailey@baileyglasser.com | Nicholas S. Preservati<br>Spilman Thomas & Battle<br>P.O. Box 273<br>Charleston, WV 25321-0273<br>npreservati@spilmanlaw.com |
| Rebecca L. Donnellan-Pomeroy<br>Bailey & Glasser<br>PO Box 326<br>Bridgeport, WV 26330<br>bpomeroy@baileyglasser.com | |

*Counsel for Plaintiff, Citynet, LLC*

Augustine M. Ripa
United States Department of Justice
Civil Division
Patrick Henry Bldg., Rm. 9209
601 D Street NW
Washington, DC 20033
augustine.m.ripa@usdoj.gov

Jennifer M. Mankins
United States Attorney's Office
PO Box 1713
Charleston, WV 26326-1713
jennifer.mankins@usdoj.gov

John Fulton Gianola
United States Attorney's Office
PO Box 1713
Charleston, WV 2532601713
john.gianola@gbbjlaw.com

*Counsel for Plaintiff, United States of America*

John David Fenwick
Benjamin B. Ware
Lucas R. White
Goodwin & Goodwin, LLP
PO Box 2107
Charleston, WV 25328-2107
jdf@goodwingoodwin.com
bbw@goodwingoodwin.com
lrw@goodwingoodwin.com

C. Simon Davidson (pro hac vice)
McGuire Woods LLP
310 Fourth Street, N.E., Suite 300
Charlottesville, VA 22902
cdavidson@mcguirewoods.com

Charles W. McIntrye, Jr. (pro hac vice*)*
McGuire Woods LLP
2001 K Street NW, Suite 400
Washington, DC 20006
cmcintyre@mcguirewoods.com

Jeremy S. Byrum (pro hac vice)
McGuire Woods LLP
Gateway Plaza
800 East Canal Street
Richmond, VA 23219
jbyrum@mcguirewoods.com

*Counsel for Defendants, Frontier West Virginia, Inc., a West Virginia corporation, and Kenneth Arndt, Dana Waldo, and Mark McKenzie, individually*

Christopher S. Ross
Gary E. Pullin
Geoffrey A. Cullop
Stephen M. Fowler
Pullin, Fowler, Flanagan, Brown & Poe
901 Quarrier Street
Charleston, WV 25301
cross@pffwv.com
gpullin@pffwv.com
gcullop@pffwv.com
sfowler@pffwv.com

*Counsel for Defendants, Jimmy Gianato and Gale Given*

PATRICK MORRISEY
ATTORNEY GENERAL


*/s/ Curtis R. A. Capehart*
Curtis R. A. Capehart
  *Deputy Attorney General*