## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
## CHARLESTON DIVISION

| | | |
|---|---|---|
| CITYNET, LLC, on behalf | ) | |
| of the United States of America, | ) | |
| | ) | |
| Plaintiff/Relator, | ) | |
| | ) | |
| v. | ) | Civil Action No.:  2:14-CV-15947 |
| | ) | |
| FRONTIER WEST VIRGINIA INC., et al., | ) | Judge: Copenhaver |
| | ) | |
| Defendants. | ) | |

### FRONTIER'S MOTION FOR PROTECTIVE ORDER

On May 9—just over two weeks before the close of discovery—Plaintiff Citynet, LLC, noticed a Rule 30(b)(6) deposition of Defendant Frontier West Virginia Inc., with a response deadline of May 26, only 15 business days after service.  The Notice was coupled with extensive document requests which come well after the deadline for written discovery. These document requests are an impermissible end-run around Rule 34's provisions and the Court's deadline for written discovery. The requests are further flawed insofar as they seek documents that have already been produced, require extensive new ESI searches at the eleventh hour, or are otherwise beyond the scope of discovery. Moreover, this deposition exceeds Rule 30's ten-deposition limit and violates the parties' agreement regarding depositions. Accordingly, Frontier seeks a protective order to quash both the document requests and deposition.

### I.    Statement of Facts

The Court entered a scheduling order in this in this long-running matter on October 21, 2021 (ECF No. 205), setting a deadline of April 1 for serving discovery requests, with discovery to close on May 26. The parties engaged in extensive document productions, with Citynet serving four written discovery requests. Citynet did not, however, request depositions until mid-March,

with just over two months left in discovery. Citynet proposed to take as many as twenty depositions, even though counsel collectively only had eighteen available days to conduct depositions before the discovery deadline. *See* Ex. 1 at 4–5 & 15. In order to efficiently schedule discovery—and to ensure that the available days weren't spent all on Citynet's depositions before any of the Defendants' depositions could be scheduled—counsel for all parties participated in extensive, global negotiations to schedule all depositions, to set their locations, and to figure out how to shoehorn two dozen depositions into the little time left. Throughout these negotiations— and in response to Citynet's refusal to seek a continuance of the trial to allow more time to complete depositions —Frontier insisted on "a definitive list of all parties' depositions." *Id.* at 3. The single exception was if "a 'new' witness was revealed during one of the scheduled depositions." *Id.* The parties did not agree to any additional depositions beyond the default ten provided by Rule 30. Rather, counsel established the following schedule:

<div style="display:flex">
<div>

Citynet Depositions
1. Gale Given (State) (completed)
2. Jimmy Gianato (State) (completed)
3. Mark McKenzie (Frontier) (completed)
4. Kenneth Arndt (Frontier) (completed)
5. Ken Mason (Frontier) (completed)
6. Billy Jack Gregg (Frontier) (completed)
7. Dan McCarthy (Frontier) (completed)
8. Kathy Leggett (Frontier) (scheduled)
9. Brian Lippold (Frontier expert) (scheduled)
10. James Thomas (Frontier expert) (scheduled)
</div>
<div>

Frontier Depositions
1. Kelley Goes (completed)
2. Jim Martin (Citynet) (completed)
3. Chris Morris (Citynet) (completed)
4. Michael Todorovich (State) (scheduled)
5. John Dunlap (State) (completed)
6. Larry Strickling (NTIA) (subject to *Touhy*)
7. Mark Luker (NTIA) (subject to *Touhy*)
8. Scott Woods (NTIA) (subject to *Touhy*)
9. Nathan Weber (Citynet expert) (scheduled)
10. Chris Deweese (Citynet expert) (scheduled)
</div>
</div>

The three NTIA depositions would be subject to the resolution of the pending *Touhy* action in the D.C. District Court. *See generally In re Nat'l Telecomms. & Info. Admin.*, 1:19-mc-00040-RDM (D.D.C.). Citynet also wished to depose these individuals, as well. The NTIA depositions were not counted against the ten-deposition limit.[1]

---

[1] For their part, Defendants Given and Gianato also sought to depose Justin McCallister, Mary Lipford, Keith Burdette, Erica Mani, Amy Goodwin, and Julie Palas, all of whom were State employees at the relevant time. Mr.

Pursuant to this agreement, the parties filed a joint motion to amend the scheduling order "requesting a short extension to allow sufficient time to complete ***the depositions that have been agreed upon***." ECF No. 254 at 1 (emphasis added). The Court granted the motion. ECF No. 272. At no point during this process did Citynet seek or even mention a Rule 30(b)(6) deposition.

On May 9—after all depositions were scheduled, after filling essentially *every* calendar availability, and after several weeks of proceeding on this agreed-to schedule—Citynet unilaterally noticed a Rule 30(b)(6) deposition. *See generally* ECF No. 325. Citynet set this impromptu deposition to occur a scant two weeks later, on May 26. That date, of course, is the last day of discovery (save for the limited extension for the agreed-to depositions). It is also a date on which Frontier's counsel previously indicated that they were unavailable. Ex. 1 at 6.

Citynet's Notice purported to seek document production, as well, with a deadline ahead of the May 26 deposition. *See* ECF No. 325 at 2–3, ¶¶ 1–5. These document requests came well after the close of written discovery (April 1), and the Notice provided fewer days for a response (less than seventeen days) than required by Rule 34. Moreover, the deposition topics and document requests largely seek information that has already been produced in discovery. Indeed, Frontier is unaware of any other responsive documents beyond those produced. To the extent that more documents may still exist (if any at all), they could only possibly be found through new, broader, and more intensive ESI custodian-and-term searches. Other portions of Citynet's document requests seek materials that are beyond the scope of discovery or are simply nonexistent.

Following Citynet's belated Notice, Frontier served objections (Ex. 2), and counsel for all parties met and conferred via email, and Frontier telephonically conferred with Citynet on May

---

McCallister and Ms. Goodwin have already been deposed. Additionally, the Frontier Defendants no longer need to depose the NTIA witnesses, but the State Defendants have indicated a desire to conduct at least two of them.

14. *See, e.g.*, Exs. 3 & 4. No resolution could be reached. Accordingly, Frontier moves to quash this improper Notice and untimely discovery requests.

## II.   Citynet's document requests are fatally late, procedurally improper, an end-run around Rule 34, and a violation of the Agreed ESI Order.

Citynet's Notice is in and of itself an extensive set of document requests. Each deposition topic doubles as a request for "all documents pertaining" to the topic. The Rules provide that "[t]he notice to a party deponent may be accompanied by a request under Rule 34 to produce documents and tangible things at the deposition." Fed. R. Civ. P. 30(b)(2). The Advisory Committee's comments, though, make clear that such deposition document requests are designed for "[w]hen the documents are few and simple, and closely related to the oral examination." Fed. R. Civ. P. 30 (1970 Amendment Notes). *See also Carter v. United States*, 164 F.R.D. 131, 133 (D. Mass. 1995).

Rule 30(b)(2) makes explicitly clear that all such document requests are governed by Rule 34, which includes its 30-day production deadline. But Citynet's notice purports to require production before the deposition. Considering that the notice was served on May 9, and the deposition was unilaterally scheduled for May 26, that leaves a less than seventeen days to gather and produce documents. That is, of course, an end-run around the 30-day production deadline.

Regardless of when the responses would be due, Citynet's requests are already too late. The Court's operative Scheduling Order set the "[l]ast day to serve discovery requests" as April 1. ECF No. 205 at 2. These requests, however, came over a month later. As such, these requests are fatally late—and a half-hearted attempt to dodge's the Court's discovery deadlines.

> A party will not be permitted to use a document request in connection with a deposition to circumvent court-imposed discovery deadlines. For example, ***if the deadline for serving documentary discovery requests has passed, a party cannot avoid the expiration of the deadline by serving an extensive document request in connection with a notice of deposition.*** A Rule 30(b)(5)[2] document request must

---

[2] Rule 30(b)(5)'s document-production provisions were moved to Rule 30(b)(2) with the 2007 Amendments.

satisfy Rule 34 and, therefore, should be served within the prescribed time for documentary discovery requests. If served after expiration of the deadline for such requests has passed, it is untimely under the court's scheduling order.

Moore's Fed. Prac. & Proc. – Civil § 30.22[2] (emphasis added).

Federal courts regularly reject such efforts to use Rule 30(b)(6) depositions to duck missed written-discovery deadlines. For instance, in *Carter v. United States*, a plaintiff similarly noticed a last-minute 30(b)(6) deposition with lengthy document requests. 164 F.R.D. 131, 131–32 (D. Mass. 1995). This notice-and-requests came at the tail-end of discovery and after the passage of the written-discovery cut-off. The Court, however, noted that deposition document requests should be "'few and simple' and 'closely related to the oral examination sought.'" *Id.* at 133 (quoting the 1970 Advisory Committee Notes). Because the plaintiff's requests were far from that, the Court found them "barred as untimely under the Court's scheduling order." *Id.* Also, the Court further noted that the requests "were directed more at the documents enumerated than the testimony sought" and grew out of ongoing discovery squabbles between the parties. *Id.* As such, the Court found the deposition document requests "were merely alternative means for Plaintiff to avoid the expiration of his right to written discovery." *Id.* (noting that the notice was "heavily laden with document requests and divorced from any articulated bases for the oral testimony"). Accordingly, the "deposition notices were improper," and the defendant didn't need to respond. *Id.*[3]

*Carter* has striking parallels to this matter. Like the plaintiff there, Citynet's Notice is aimed more at documents than testimony. For instance, Topic 1 seeks "[t]he agreements between"

---

[3] Numerous other courts reach the same conclusion as *Carter* that a party cannot "do indirectly what she could not do directly, namely obtain the production of an extensive database through a deposition notice after the time for propounding written discovery had expired." *Hahn v. Massage Envy Franchising, LLC*, No. No. 12cv153-DMS (BGS), 2014 U.S. Dist. LEXIS 201638, at *19 (S.D. Cal. July 24, 2014). *See also, e.g.*, *Kosek v. Ethicon, Inc.*, 2021 U.S. Dist. LEXIS 190905 (N.D. Ill. May 17, 2021) (holding that a party need not respond to document requests sent with a deposition notice because the written discovery deadline had passed); *Aloe Vera of Am. v. United States*, No. CV 99-1794-PHX-JAT, 2004 U.S. Dist. LEXIS 34532, at *3–*9 (same).

Frontier and each CAI to which the BTOP grant built fiber. ECF No. 325 at 2, ¶ 1. Citynet not only wants the agreements themselves, but also "the term" of the agreements, "the type and price of services," and "whether the CAI was considered a new customer." *Id.* That, by its very nature, is more aimed at documents rather than oral testimony. Indeed, there were *hundreds* of CAIs. No amount of preparation could render a witness who could testify to each of those details. He or she could only ever refer to documents. Citynet surely knows that. Topics 4 and 5, likewise, seeks "Information" allegedly exchanged between Frontier and State officials regarding each one's respective grant applications. *Id.* at ¶¶ 4 & 5. Again, that kind of information could only possibly be in document form—particularly considering that this occurred 13 years ago. A corporate representative could only refer to documents for such testimony. As such, these requests are "directed more at the documents enumerated than the testimony sought"—and they certainly are not "'few and simple' and 'closely related to the oral examination sought.'" *Id.* at 133.

The parallels don't end there. When undersigned counsel raised Frontier's objections with opposing counsel, Citynet claimed that it needs a 30(b)(6) deposition because of "the amount of information produced," to navigate the document production, and to match up "which documents are responsive to which discovery request."[4] Ex. 3 at 3. That was the same reason that the plaintiff offered in *Carter*—and the same reason that the court rejected out of hand. There, plaintiff's claimed basis for the deposition "ha[d] more to do with ***the categorization of information already in Plaintiff's possession*** than with Defendant's failure to produce documents." *Carter*, 164 F.R.D. at 134 (emphasis added). But "the Court cannot do the work which Plaintiff himself must do to

---

[4] Citynet has repeatedly asked that Frontier index its document production and match up particular Bates numbers with specific requests. But Frontier produced its documents as they are "kept in the usual course of business" and therefore has no obligation to "label them to correspond to the categories in the request. Fed. R. Civ. P. 34(b)(2)(E)(i). *See also CTL Eng'g v. ms consultants, inc.*, No. 3:14-CV-90, 2015 U.S. Dist. LEXIS 39762, at *7 (N.D. W. Va. Mar. 30, 2015) ("When a party produces documents 'as they are kept in the usual course of business,' it has no duty to organize and label the documents to correspond to each request." (citations omitted)).

classify and address the import of the documents." *Id.* The same is true here: Categorization of documents is no basis to hold a 30(b)(6) deposition, nor is it grounds to permit a party to disregard the discovery deadlines.

Not only do Citynet's document requests violate the operative Scheduling Order, they also violate the operative Rule of Civil Procedure. As noted, Rule 30(b)(2) permits document requests to be served with deposition notices, but they are governed by Rule 34—including its 30-day production deadline. Citynet demands that the documents be produced "at or before" the deposition, a period of less than seventeen days for Frontier to gather, review, and produce responsive documents (not to mention find and prepare a witness). That is, of course, an end-run around the 30-day deadline. Regardless of the response deadline, though, the requests are beyond the applicable deadline and, as such, are fatally late.

### III. Citynet's deposition notice violates the Federal Rules of Civil Procedure and counsel's agreements setting depositions.

Citynet's document requests are improper, as is the deposition itself. Rule 30 limits a party to ten depositions. Fed. R. Civ. P. 30(a)(2)(A)(i). The belated 30(b)(6) Notice is Citynet's eleventh. The parties never agreed to extra depositions. And Citynet hasn't seen fit to ask the Court for leave, either. Instead, Citynet unilaterally noticed the deposition in violation of Rule 30.[5]

Not only did Citynet violate the Rules of Civil Procedure, it breached the agreement regarding the deposition schedule. The parties agreed that they would "definitive[ly] list" and then schedule all depositions that they wished to take—subject only to a "new," previously unknown witness being revealed during a deposition. Ex. 1 at 3. However, Citynet doesn't seek to depose

---

[5] One supposes that Citynet could belatedly seek the Court's leave after the fact. But the Court shouldn't reward such a seek-forgiveness-later procedure. And as further explained in Part IV, Citynet's topics are also beyond the scope of Rule 26 in any event. Accordingly, the Court should not grant leave

any newly identified person that no one had known of before. It is in fact the just opposite: It is a corporate representative to testify as to topics that could have been identified at any point prior. Citynet could have identified its supposed need for testimony on these topics when it was providing its "definitive" list.

**IV.    Citynet's specific topics and document requests have already been answered, are beyond the scope of discovery, or seek nonexistent information.**

As set forth above, Citynet's Notice violates the Rules of Civil Procedure, the operative Scheduling Order, and counsel's agreement scheduling all depositions. Setting all that aside, Citynet's requests are substantively beyond the scope of discovery. They variously seek documents that are irrelevant, have already been produced in discovery, would require entirely new tranches of ESI searches, and seek documents that never existed. As such, the requests are beyond the scope of discovery. Frontier has set forth specific objections (Ex. 2) but summarizes the issues below.

Topic 1 seeks the "agreements between Frontier" and each of the CAIs connected by the BTOP grant project. That information is irrelevant, or at the very least grossly disproportionate to the needs of this case. Citynet's claims depend on whether Frontier fraudulently presented a false claim to the Federal Government for money or payment—not on the finer points of internet service contracts. And in any event, the overwhelming majority of the CAIs were State agencies that had the option of obtaining Frontier internet service through the State's omnibus contract (called the "MPLS07"). That contract, of course, is a public document and produced long ago.

Topic 2 seeks agreements between Frontier and other internet service providers who used the BTOP-constructed fiber. But only one provider has accessed the BTOP fiber: Citynet.[6] It is well aware of the terms of that agreement, which has been produced anyways.

---

[6] Citynet indicated that it would drop this topic and document request if Frontier stipulated that Citynet was the only such company. Ex. 4 at 1–2. Frontier accepts and so stipulates.

Topic 3 seeks all information regarding Frontier's own competing (and unsuccessful) BTOP grant applications. This has long been a topic of Citynet's discovery. Pursuant to the agreed ESI Order (ECF No. 141), Frontier and Citynet negotiated intricate ESI search protocols. Those protocols set forth, in detail, the specific custodians to be searched and what terms would be used. Citynet had every right and incentive to reasonably fashion those search protocols to target whatever BTOP grant application materials that it wished. And it did so. Those searches rendered well over 100,000 pages of emails, attachments, and documents which have been produced. If Citynet wants even more grant-preparation documents beyond those produced over the past six years, further documents could only be found with new, broader custodian-and-term searches. Thus, this topic is itself an extensive ESI document request. As such, it is doubly violative of the Court's orders. First, violates the operative Scheduling Order, which provides that all written discovery requests be served by April 1. Second, it also violates the agreed ESI Order, where Citynet agreed to 14 custodians and 35 search terms—all of which have been used. Citynet should not be permitted back-door extra ESI requests at the tail-end of discovery through a 30(b)(6) deposition.[7] Additionally, Frontier's unsuccessful BTOP applications and submissions have already been produced, and no further discovery is needed on such a marginally material matter.

Topic 4 seeks assistance provided by the State to Frontier for use in Frontier's grant application. Again, this has been the subject of intensive ESI discovery for years. Based upon the breadth and thoroughness of the custodian-and-term searches employed, Frontier believes that all BTOP-related communications between it and the State have been produced. To the extent that there are still documents that have slipped through—if any at all—those could only ever be

---

[7] The ESI Order contemplates "Supplemental Custodians," but those are subject to good-faith negotiations among counsel—and would need to be before the written-discovery cut-off in any event.

obtained or produced through further and broader ESI searches. Again, such a request would violate the Scheduling Order as well as the ESI Order.

Finally, Topic 5 is the inverse of Topic 4. It seeks assistance provided by Frontier to the State regarding *the State's* grant application. Unsurprisingly, this is much like the prior topics in that it has long been the subject of ESI discovery. But this final topic bears special mention for one additional reason: Frontier has no knowledge of any employee assisting the State with its application. Rather, every competent witness confirms that Verizon, not Frontier, assisted the State with its grant.[8] That unanimous testimony is confirmed by the documents, as well. The specific spreadsheets that the State used to draft its grant application (listing locations, cost estimates, etc.) came from Verizon, not Frontier. *See* Ex. 7 (CITYNET 000185–209).[9] Moreover, Frontier did not receive this spreadsheet until March 8, 2010, *after* the grant was awarded. The spreadsheet was provided by a Verizon engineer, and the metadata confirms Verizon as the author. Ex. 8 (FRON070016660–01).[10]

---

[8] *See, e.g.*, Goes Dep. (Ex. 5) at 146:117–18 ("I worked with Verizon on issues relating to the application."); *id.* at 168:10–11 ("Those are estimates based on information provided to us, I believe, from Verizon."); *id.* at 168:17–20 "[G]enerally speaking, [we] were consulting Verizon and other sources for those estimates based on the locations of the CAIs listed in the application."); Gianato Dep. (Ex. 6) at 72:1–4 ("Well, Front-, Front-, Frontier didn't really assist the State as far as the process goes. When then, when the grant application began, we were dealing primarily with Verizon."); *id.* at 110:2–6 ("[W]e were provided estimate sheets from Verizon early on in the project where we provided them a list of all the facilities; and they came back with a spreadsheet that basically had a similar cost for all the facilities.").

[9] This information then went, item-for-item, into the State's grant application. For example, Verizon's spreadsheet lists 1,064 total fiber construction locations, including 471 schools, 77 state police barracks, 34 jails, and 55 county courthouses. *See* Ex. 7 at CITYNET 000209. The State's grant application sets forth the exact same figures. *Compare with* ECF No. 30-3 at 33–34. Verizon's spreadsheet also estimates total project costs $93,291,297 (Ex. 7 at CITYNET 000209), which is the same amount as the State's grant request (ECF No. 30-3 at 31–32). The line items also match up, if the two halves of the Verizon proposal are totaled. *See, e.g.*, Verizon's "Engineering" costs of $240,000 on the Microwave Radio Tower portion + Verizon's "Professional Services" costs of $23,400,000 = the State's "Engineering/Professional Services" costs of $23,640,000.

[10] The email attachment, a large spreadsheet, is not amenable to printing. Frontier has included the first page. Save for annotations to one side, it is the same as spreadsheet that Verizon sent the State.

Taken together, this testimony and these documents prove what Frontier has been saying since the start of this litigation: Frontier did not assist in drafting the State's BTOP application. Nevertheless, Citynet still propounds a 30(b)(6) deposition topic and document request in hopeless pursuit of something that never occurred.

## V.   <u>Conclusion</u>

Citynet's document requests contradict Rule 34 and violate the Court's scheduling order. The Notice is further improper as it seeks information that has already been produced, would require entirely new ESI searches, or is beyond the scope of discovery. It also violates the Rules of Civil Procedure and the parties' agreement on the deposition schedule.

Accordingly, Frontier seeks a protective order providing as follows:

1. Frontier has no obligation to respond to the document requests in the 30(b)(6) Notice;
2. Frontier has no obligation to comply with the 30(b)(6) Notice;
3. Citynet pay Frontier's reasonable attorney's fees and costs incurred in this Motion; and
4. Any other appropriate relief.

Respectfully submitted,

**FRONTIER WEST VIRGINIA INC.,
KENNETH ARNDT, DANA WALDO, and
MARK McKENZIE,**

By counsel,

<u>/s/ Lucas R. White</u>
J. David Fenwick (W. Va. Bar No. 6029)
Richard D. Owen (W. Va. Bar No. 2794)
Lucas R. White (W. Va. Bar No. 12501)
GOODWIN & GOODWIN, LLP
300 Summers Street, Suite 1500
Charleston, WV 25301
(304) 346-7000
jdf@goodwingoodwin.com
rdo@goodwingoodwin.com
lrw@goodwingoodwin.com

*Counsel for the Frontier Defendants*

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION**

| | | |
|---|---|---|
| CITYNET, LLC, on behalf | **)** | |
| of the United States of America, | **)** | |
| | **)** | |
| Plaintiff/Relator, | **)** | |
| | **)** | |
| v. | **)** | Civil Action No.:  2:14-CV-15947 |
| | **)** | |
| FRONTIER WEST VIRGINIA INC., et al. | **)** | Judge: Copenhaver |
| | **)** | |
| Defendants. | **)** | |

<u>**CERTIFICATE OF SERVICE**</u>

I, Lucas R. White, hereby certify that I served a true and correct copy of the foregoing **Frontier's Motion for Protective Order** upon all counsel of record on May 16, 2022, via the Court's ECF system.

*/s/ Lucas R. White*
Lucas R. White (W. Va. Bar. No. 12501)