UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

CITYNET, LLC, on behalf of
the United States of America,

        Plaintiff/Relator,

v.                                Civil Action No. 2:14-cv-15947

FRONTIER WEST VIRGINIA, INC.,
a West Virginia corporation;
KENNETH ARNDT, individually;
DANA WALDO, individually;
MARK MCKENZIE, individually;
JIMMY GIANATO, individually;
and GALE GIVEN, individually,

        Defendants.

<u>MEMORANDUM OPINION AND ORDER</u>

        Pending is the motion for partial summary judgment

filed February 22, 2022, by defendants Frontier West Virginia,

Inc.; Kenneth Arndt; Dana Waldo; and Mark McKenzie (together,

"Frontier").  Frontier Mot. Summ. J., ECF No. 222.


I. Background


        On or about February 12, 2010, the West Virginia

Executive Office ("WVEO") was awarded $126,323,296 in federal

grant money under the American Recovery and Reinvestment Act of

2009 "to build a[n open-access] middle-mile [broadband internet]

network" in West Virginia.  First Am. Compl. ¶¶ 1-2, 58, ECF No.

30; Frontier Ans. ¶ 58, ECF No. 100.[1]  On October 1, 2010, the
WVEO and Frontier agreed that Frontier would serve as the
grant's sub-recipient to build the middle-mile network "to over
1,000 points of interest throughout West Virginia."  First Am.
Compl. ¶¶ 70-71; Frontier Ans. ¶¶ 70-71; see also First Am.
Compl., Ex. 13 (memorandum of understanding).

Plaintiff/relator Citynet, LLC ("Citynet") filed a qui
tam complaint on May 7, 2014.  Compl., ECF No. 1.  On June 17,
2016, the United States declined to intervene in the action.
ECF No. 27.  And on July 18, 2016, Citynet filed the first
amended complaint, which is the operative pleading in this
matter.  First Am. Compl., ECF No. 30.

Citynet alleges that Frontier defrauded the United
States in connection with the grant in violation of the False
Claims Act ("FCA"), 31 U.S.C. §§ 3729-3733.  First Am. Compl. ¶¶
3-6, 9-12, 14.[2]  "The FCA is designed to prevent fraud and

---

[1] "Middle mile" is a category of internet infrastructure
comprising the fiber optic lines that link the larger "backbone"
fiber optic lines to "last mile" lines that connect to the end
consumer.  See Inquiry Concerning the Deployment of Advanced
Telecommunications Capability, 15 FCC Rcd. 20913, 20922-23
(2000).

[2] Citynet also filed suit against West Virginia state employees
Jimmy Gianato, Gale Given, and Kelly Goes as participants in the
allegedly fraudulent conduct.  Citynet, with the United States'
consent, voluntarily dismissed Goes from this action without
prejudice.  ECF Nos. 92-93.  Gianato and Given remain in the

reflects Congress' broad goal to protect the funds and property of the government." United States ex rel. Rostholder v. Omnicare, Inc., 745 F.3d 694, 700 (4th Cir. 2014) (quotation marks omitted).

Relevant here, Citynet claims that Frontier assisted the WVEO in the submission of the WVEO's grant application and Frontier fraudulently misrepresented the work that it planned to do. See id. ¶¶ 38-57. Citynet alleges that Frontier submitted that it would build an open-access (that is, open to use by competitors) middle mile broadband internet network, all the while intending instead to build last mile lines for its sole benefit. See id. ¶¶ 38-57; see also id. ¶¶ 2-4, 75-78, 91. In particular, Citynet charges Frontier in Counts I (false claims) and V (false records) with "knowingly present[ing], or caus[ing] to be presented, . . . at least 646 false or fraudulent claims for payment or approval by seeking payment from funds restricted to an approved [federal] grant award for construction of a middle-mile network for work that Frontier provided constructing a non-approved Last-Mile project," resulting in $41,531,832.25 in fraudulent remuneration. Id. ¶¶ 134, 162; see also id. ¶¶ 133-39 (Count I), 161-67 (Count V). Additionally, Count IX

---

case but are not subject to the pending partial summary judgment motion.

states an FCA conspiracy claim that is, in part, based on the conduct underlying Counts I and V.  See id. ¶¶ 189-94.

On August 23, 2016, Frontier moved to dismiss the First Amended Complaint.  Frontier Mot. Dismiss, ECF No. 64. Among other things, Frontier argued that Counts I and V should be dismissed under the FCA's "public disclosure bar," 31 U.S.C. § 3730(e)(4)(A).  Id.  "The public-disclosure bar aims 'to strike a balance between encouraging private persons to root out fraud and stifling parasitic lawsuits' in which a relator, instead of plowing new ground, attempts to free-ride by merely reiterating previously disclosed fraudulent acts."  United States ex rel. Beauchamp v. Academi Training Ctr., 816 F.3d 37, 43 (4th Cir. 2016) (quoting Graham Cnty. Soil & Water Conservation Dist. v. United States ex rel. Wilson, 559 U.S. 280, 295 (2010)).

The court agreed with Frontier, to an extent.  See generally Mem. Op. & Order on Frontier's Mot. Dismiss, ECF No. 94.  Effective March 23, 2010, Congress amended the public disclosure bar to augment its scope.  Beauchamp, 816 F.3d at 39-40.  Generally speaking, the public disclosure bar forecloses FCA claims brought by private entities or citizens when based on allegations that are already matters of public record (except when the private entity or person is the original source of the

4

information).  See id. at 39.  Because the allegations
underlying Counts I and V "span from 2009 to 2014," Counts I and
V straddle both the pre- and post-2010 versions.  Mem. Op. &
Order on Frontier's Mot. Dismiss 48.  So, Frontier's motion to
dismiss presented the issue of which of the two versions, or to
what extent the two versions, of the public disclosure bar
apply.

        The Fourth Circuit holds that the 2010 amendments to
the public disclosure bar do not apply retroactively.  See
United States ex rel. May v. Purdue Pharma L.P., 737 F.3d 908,
916-18 (4th Cir. 2013).  But the Fourth Circuit "has not
instructed district courts how to analyze the public-disclosure
bar when conduct alleged in a complaint spans the pre- and post-
amendment effective date" of the 2010 FCA amendments.  Mem. Op.
& Order on Frontier's Mot. Dismiss 49.  Thus, this court in
ruling on the motion to dismiss applied both versions of the
public disclosure bar to the conduct alleged by Citynet and to
the various public disclosures submitted by the parties.  Id.
In doing so, the court found that Citynet's allegations were
publicly disclosed under the post-2010 version of the public
disclosure bar, but not under the pre-2010 version.  Id. at 63,
69.  Accordingly, the court "dismissed [Counts I and V] with
respect to Citynet's allegations of conduct occurring after the

2010 amendments to the FCA." Id. at 69.[3]  Because the pleadings did not set forth a definitive timeline of events, the court, in effect, left for discovery to probe the dates of Frontier's alleged misconduct.  Cf. id. at 75 n.13.

On February 22, 2022, Frontier moved for summary judgment on Counts I and V, and, in part, on Count IX.  Frontier Mot. Summ. J.  Frontier has renewed its argument concerning the public disclosure bar with respect to Counts I and V, and with respect to Count IX insofar as it relies on the same conduct. Id.

## II. Summary Judgment Standard

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Where, as in the pending matter, the material facts are not in dispute and resolution turns on statutory interpretation, summary judgment can be addressed as a question of law.  See Healthkeepers, Inc. v. Richmond Ambulance

---

[3] The citation for the court's order is Citynet, LLC v. Frontier West Virginia, Inc., No. 2:14-cv-15947, 2018 WL 1582527 (S.D. W. Va. Mar. 30, 2018), rev'd on other grounds sub nom., United States ex rel. Citynet, LLC v. Gianato, 962 F.3d 154 (4th Cir. 2020).

<u>Auth.</u>, 642 F.3d 466, 471 (4th Cir. 2011) ("The outcome of this case rests solely on statutory interpretation.  This Court reviews the district court's grant of summary judgment de novo since a question of statutory interpretation, [is] a quintessential question of law." (quotation marks omitted and alteration in original)); <u>NISH v. Cohen</u>, 247 F.3d 197, 201 (4th Cir. 2001) ("Since the facts underlying this appeal are not in dispute, the district court decided the questions of law by way of summary judgment.  We review its decision de novo.").

### III. Discussion

Citynet brings Counts I, V, and IX under three separate sections of the FCA.  Respectively, section 3729(a)(1)(A) imposes civil liability on any person who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval" (Count I); section 3729(a)(1)(B) on any person who "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim" (Count V); and section 3729(a)(1)(C) on any person who "conspires to commit a violation of subparagraph (A)[ or] (B)" (Count IX).  31 U.S.C. §§ 3729(a)(1)(A)-(C).  At the outset, the court notes that conspiracy is not individually actionable absent an underlying

7

violation of the FCA.  <u>United States ex rel. Kasowitz Benson</u>
<u>Torres LLP v. BASF Corp.</u>, 929 F.3d 721, 728-29 (D.C. Cir. 2019);
<u>United States ex rel. Godfrey v. KBR, Inc.</u>, 360 F. App'x 407,
412-13 (4th Cir. 2010).  Thus, Count IX rises and falls with
Counts I and V for purposes of the pending motion.

     Frontier contends that Counts I and V should be
dismissed under the public disclosure bar.  Frontier Mot. Summ.
J.  The public disclosure bar asks whether a relator's
allegations are already "publicly disclosed;" that is, "when
information exposing the fraud has already entered the public
domain prior to the relator's suit."  <u>Id.</u> at 43.

     Before March 23, 2010, the public disclosure bar read
as follows:

> No court shall have jurisdiction over an action under
> this section based upon the public disclosure of
> allegations or transactions in a criminal, civil, or
> administrative hearing, in a congressional,
> administrative, or Government Accounting Office
> report, hearing, audit, or investigation, or from the
> news media, unless the action is brought by the
> Attorney General or the person bringing the action is
> an original source of the information.

31 U.S.C. § 3730(e)(4)(A) (2009, eff. 1986).  Effective March
23, 2010, Congress amended the public disclosure bar to its
current form:

> The court shall dismiss an action or claim under this
> section, unless opposed by the Government, if
> substantially the same allegations or transactions as

8

alleged in the action or claim were publicly
disclosed--

    (i) in a Federal criminal, civil, or
    administrative hearing in which the Government or
    its agent is a party;

    (ii) in a congressional, Government
    Accountability Office, or other Federal report,
    hearing, audit, or investigation; or

    (iii) from the news media,

unless the action is brought by the Attorney General
or the person bringing the action is an original
source of the information.

31 U.S.C. § 3730(e)(4)(A) (2020, eff. 2010).

      Because the 2010 amendments do not apply
retroactively, the Fourth Circuit indicates that the time "when
the underlying conduct occurred" dictates whether the pre- or
post-2010 version of the public disclosure bar applies.  See
May, 737 F.3d at 915-18.  And which version of the public
disclosure bar applies has significant implications.  Among
other things, the 2010 amendments "substantially narrowed the
class of disclosures that can" qualify as a public disclosure on
the one hand, and on the other hand relaxed "the required
connection between the plaintiff's claims and the qualifying
public disclosure" before a plaintiff's claims become publicly
disclosed.  Id. at 917.  As noted above, these differences
resulted in the court's dismissal of Citynet's Counts I and V
with respect to alleged conduct that occurred after the 2010

amendments to the FCA became effective but not before.  See Mem.
Op. & Order on Frontier's Mot. Dismiss 45-65, 69.  Since the
pleadings did not establish a definitive timeline, the court, in
effect, left the matter for further development during
discovery.  Cf. id. at 75 n.13.

     Discovery in this matter has now closed.  There are
only two facts material to this motion, upon which the parties
agree for purposes of this motion: Frontier's allegedly
fraudulent course of conduct occurred before the 2010 amendments
to the public disclosure bar, but neither Frontier nor the WVEO
submitted a claim for payment until after the 2010 amendments.
See Citynet Resp. 9, ECF No. 233; Frontier Reply 1, ECF No. 235.
Thus, the issue presented is what is "the underlying conduct,"
May, 737 F.3d at 915, that decides which version of the public
disclosure bar applies -- the alleged fraud, or the submission
of a claim.  For reasons explained below, the date of the
alleged fraud, not the claims for payment, governs which version
of the public disclosure bar applies in this case.

     Frontier asserts that the public disclosure bar in
effect when Citynet's action accrued upon submission of a claim
is the one that applies.  See Frontier Mem. Supp. 9-11.[4]

---

[4] Frontier insists that the court already resolved this legal
issue in a footnote of the memorandum opinion and order on its

Frontier notes that the Fourth Circuit holds that the FCA "attaches liability, not to the underlying fraudulent activity or to the government's wrongful payment, but to the 'claim for payment.'"  Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 785 (4th Cir. 1999).  Because all the claims for payment were submitted on or after the 2010 amendments went into effect (March 23, 2010), Frontier argues that the post-2010 version should apply to Counts I and V.  Frontier Reply 1.

In response, Citynet urges the court to adopt a broader view of what constitutes a requisite "claim" for FCA liability to attach.  Citynet characterizes its theory of liability as fraudulent inducement.  See Citynet Resp. 10-13.  Fourth Circuit case law, according to Citynet, teaches that FCA liability under a fraudulent inducement theory accrues when the defendant engages in the fraudulent conduct.  See id. at 2, 10-13.  Inasmuch as Frontier's allegedly fraudulent activity occurred before the 2010 FCA amendments, Citynet argues that the pre-2010 public disclosure bar should apply.  Id. at 13.

---

motion to dismiss.  Frontier Mem. Supp. 9 (citing Mem. Op. & Order on Frontier's Mot. Dismiss 75 n.13).  Frontier stretches the court's brief observation in the footnote too far.  The court merely posited that the billing dates may be dispositive of which version of the public disclosure bar applies.  The court fully analyzes that issue herein.

Citynet's reading of the case law is incorrect.  In

United States ex rel. Grant v. United Airlines, Inc., the Fourth

Circuit reaffirmed that "[i]n order for a false statement to be

actionable under [the FCA], it must be made as part of a false

or fraudulent claim."  912 F.3d 190, 196 (4th Cir. 2018).  This

is true even though "[section] 3729(a)(1)(B) does not require

that the defendant itself 'present' the false claim to the

government."  Id. at 200.  Consequently, although section

3729(a)(1)(B) liability is predicated on the defendant's

knowingly making or using a false record material to a false

claim submitted sometime later, see 31 U.S.C. § 3729(a)(1)(B),

liability still does not attach to the defendant's misconduct

until a claim is submitted to the United States, see Grant, 912

F.3d at 200.  Likewise, the same would be true under a section

3729(a)(1)(A) action for "caus[ing] to be presented[] a false or

fraudulent claim."  31 U.S.C. § 3729(a)(1)(A).  Grant teaches

that pre-submission fraudulent conduct is not actionable until

someone submits to the United States a claim for payment.

Even so, the date FCA liability attaches to pre-

submission fraud does not resolve which version of the public

disclosure bar applies to Counts I and V.  The court concludes

that the date of the allegedly fraudulent or false conduct

dictates which version of the public disclosure bar applies to a relator's FCA action.

"[T]he 'principle that the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place has timeless and universal appeal.'" Landgraf v. USI Film Prods., 511 U.S. 244, 265 (1994) (quoting Kaiser Aluminum & Chem. Corp. v. Bonjorno, 494 U.S. 827, 855 (1990) (Scalia, J., concurring)). The gravamen of the FCA is the defendant's alleged fraud, whether it occurred in the inducement, on the presentment of a false claim, or otherwise. See 31 U.S.C. §§ 3729, 3730; see also Harrison, 176 F.3d at 788. The principal function of the FCA, after all, is to combat fraud. See United States v. Neifert-White Co., 390 U.S. 228, 232 (1968) ("Debates at the time suggest that the Act was intended to reach all types of fraud, without qualification, that might result in financial loss to the Government."); United States ex rel. Cody v. ManTech Int'l, Corp., 746 F. App'x 166, 175 (4th Cir. 2018). It follows that the proper version of the public disclosure bar is the one in effect when the alleged fraudulent or false conduct occurred.

Section 3729(a)(1)(B) liability and fraudulent inducement illustrate this point. As noted above, "[section] 3729(a)(1)(B) does not require that the defendant itself

13

'present' the false claim to the government." <u>Grant</u>, 912 F.3d at 200. And a fraudulent inducement theory does not even require that "the claims . . . submitted [be] in and of themselves false," so long as there is "fraud surrounding the efforts to obtain the contract or benefit status, or the payments thereunder." <u>Harrison</u>, 176 F.3d at 788. It would be inconsistent, then, to judge a defendant not by the law that existed when it acted, but by the law that existed when someone else did. This is especially true where the other person's conduct might not even be a fraud, let alone the fraud that the FCA seeks to punish.

Moreover, the Fourth Circuit explains that "[t]he proof required to establish the substantive elements of [an FCA action] is wholly distinct from that necessary to" establish that the "substantive issues" underlying the action have been publicly disclosed. <u>United States ex rel. Vuyyuru v. Jadhav</u>, 555 F.3d 337, 349-50 (4th Cir. 2009). One popular formulation of whether a relator's allegations have been publicly disclosed is as follows:

> [A]n allegation of fraud (Z) consists of two "essential elements," a misrepresented state of facts (X) and a true state of facts (Y), such that X + Y = Z. If the allegation of fraud (Z) is not itself in the public domain, then the bar applies only if both X and Y are publicly known. But while both elements must be public, the public information need not itself

prove fraud.  Rather, the information must alert the government to "the likelihood of wrongdoing."

United States ex rel. Shea v. Cellco P'ship, 863 F.3d 923, 933 (D.C. Cir. 2017) (citations omitted) (quoting United States ex rel. Springfield Terminal Ry. Co. v. Quinn, 14 F.3d 645, 654 (D.C. Cir. 1994)).  In other words, an allegation of fraud is publicly disclosed "only when either the allegation of fraud or the critical elements of the fraudulent transaction themselves were in the public domain."  Springfield Terminal, 14 F.3d at 654 (emphasis omitted).

The fraudulent conduct -- "a misrepresented state of facts (X) and a true state of facts (Y)" -- is the quintessential focus of the public disclosure bar.  See Shea, 863, F.3d at 933.  For example, in United States ex rel. Colquitt v. Abbot Labs., the relator alleged that the defendant fraudulently induced the Food and Drug Administration into approving a medical device by making false statements about the device's intended use, and that Medicare later made payments for that device used in medical procedures.  858 F.3d 365, 372-74 (5th Cir. 2017).  The Fifth Circuit concluded that the relator's allegedly fraudulent scheme had been publicly disclosed even though the public information did not disclose that any particular claim had been submitted by the relator or someone else:

> In this case, X is the fact that [the relator]
> presented the devices to the FDA as biliary stents, Y
> is the fact that most of the stents [were unfit as
> biliary stents but were compatible for other uses],
> and Z is the conclusion that Abbott misstated the
> intended use of the stents.

Id. at 374.  Thus, to the extent the public disclosure bar's

elements affect which version of the FCA applies to a

defendant's conduct, it reinforces the court's conclusion that

the date of the alleged fraud controls.

Accordingly, under the material facts agreed to by the

parties for purposes of this motion, the pre-amendment version

of the FCA's public disclosure bar applies to Counts I and V.

The court's conclusion is consistent with its previous decision

on Frontier's motion to dismiss.  Frontier West Virginia, Inc.;

Arndt; Waldo; and McKenzie's motion for summary judgment is

denied.

## IV. Conclusion

For the foregoing reasons, it is ORDERED that Frontier

West Virginia, Inc.; Arndt; Waldo; and McKenzie's motion for

summary judgment be, and hereby is, denied.

    The Clerk is requested to transmit copies of this

order to all counsel of record and any unrepresented parties.

         ENTER: September 8, 2022

         John T. Copenhaver, Jr.
         Senior United States District Judge

17