UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

CITYNET, LLC, on behalf of
the United States of America,

       Plaintiff/Relator,

v.                         Civil Action No. 2:14-cv-15947

FRONTIER WEST VIRGINIA, INC.,
a West Virginia corporation;
KENNETH ARNDT, individually;
DANA WALDO, individually;
MARK MCKENZIE, individually;
JIMMY GIANATO, individually;
and GALE GIVEN, individually,

       Defendants.

## MEMORANDUM OPINION AND ORDER

Pending is plaintiff/relator Citynet, LLC's ("Citynet") motion for award of fees collected by the collection efforts of the United States against the Executive Office of the State of West Virginia, filed November 5, 2021.

### I. Background

Citynet instituted this action on May 7, 2014, with the filing of its qui tam complaint[1] under the False Claims Act

---

[1] "Qui tam is short for 'qui tam pro domino rege quam pro se ipso in hac parte sequitur,' which means 'who pursues this action on our Lord the King's behalf as well as his own.'" Rockwell Intern. Corp. v. United States, 549 U.S. 457, 463 n.2 (2007).

("FCA"), 31 U.S.C. §§ 3729-3733. ECF No. 1. The FCA is designed "to combat fraud against the federal government," and to do so "quickly and efficiently." United States ex rel. Cody v. ManTech Int'l, Corp., 746 F. App'x 166, 175 (4th Cir. 2018) (first citing Mann v. Heckler & Koch Def., Inc., 630 F.3d 338, 349 (4th Cir. 2010); and then quoting United States ex rel. Sanders v. N. Am. Bus Indus., Inc., 546 F.3d 288, 295 (4th Cir. 2008)). The FCA accomplishes those goals in part through "its qui tam provisions, which allow a private party known as a 'relator' to bring an FCA action on behalf of the Government." State Farm Fire and Cas. Co. v. United States ex rel. Rigsby, 137 S. Ct. 436, 440 (2016). The United States can also bring an FCA suit on its own behalf, 31 U.S.C. § 3730(a), or the United States can choose to intervene in an FCA suit filed by a private party and prosecute the suit on its own behalf, id. §§ 3730(b)(2), (b)(4).

Pursuant to 31 U.S.C. §3730(b)(2), Citynet's qui tam complaint was filed in camera, sealed, and served on the United States but not the defendants. ECF Nos. 2-3. The United States then moved for several extensions under 31 U.S.C. § 3730(b)(3) while it decided whether to intervene and conduct the action on its own behalf. See ECF Nos. 4-26. On June 17, 2016, the

United States declined to intervene, ECF No. 27, and on June 28, 2016, the qui tam complaint was unsealed, ECF No. 28.

On July 18, 2016, Citynet filed the first amended qui tam complaint. First Am. Compl., ECF No. 30. Citynet alleges that the Executive Office of West Virginia ("WVEO") received $126,323,296 in federal grant money from the American Recovery and Reinvestment Act's Broadband Technology Opportunities Program "to build a[n open-access] middle-mile [broadband internet] network" in West Virginia. Id. ¶¶ 1-2.[2] Citynet states that the WVEO and defendant Frontier West Virginia, Inc. ("Frontier"), agreed that "Frontier would serve as a 'sub-recipient' of the grant to establish a middle-mile broadband network to over 1,000 points of interest throughout West Virginia." Id. ¶ 71; see also id. ¶¶ 69-74. Citynet alleges that Frontier; Frontier employees and defendants Kenneth Arndt, Dana Waldo, and Mark McKenzie; and West Virginia state employees and defendants Gale Given and Jimmy Gianato, individually, defrauded the United States in connection with the grant application and implementation in violation of the FCA. Id. ¶¶

---

[2] "Middle mile" is a category of internet infrastructure comprising the fiber optic lines that link the larger "backbone" fiber optic lines to "last mile" lines that connect to the end consumer. See Inquiry Concerning the Deployment of Advanced Telecommunications Capability, 15 FCC Rcd. 20913, 20922-23 (2000).

3, 9-12, 14; see also id. ¶¶ 4-6 (providing additional summary information on the allegations against the defendants under the FCA).[3] Trial in this matter is currently scheduled October 4, 2022. ECF No. 205.

Following the filing of Citynet's original qui tam complaint, the United States Department of Justice ("DOJ") and the United States Department of Commerce Office of Inspector General ("OIG") "jointly investigated the complaint on behalf of the United States." U.S. Dep't of Com. Off. of Inspector Gen., Investigative Report No. 14-0480, at 1 (June 2017), ECF No. 206-1 [hereinafter OIG Report]. "Following the [United States'] deci[sion] not to intervene" in the civil action, the OIG continued to investigate Citynet's allegations. Id. In June 2017, the OIG released a report of its investigation. The OIG's findings are summarized as follows:

> With respect to unallowable costs, the OIG found that (1) the [WVEO] reimbursed Frontier $465,000 for invoice processing fees that were unreasonable, unallocable, and not supported by adequate documentation and (2) the [WVEO] paid Frontier at least $4.24 million in unallowable indirect "loadings" charges (e.g., overhead and administrative expenses).

---

[3] Citynet also filed suit against West Virginia state employee Kelly Goes. Citynet, with the United States' consent, voluntarily dismissed Goes from this action without prejudice. ECF Nos. 92-93.

Id. at Report Summary. The OIG referred for further investigation additional potentially unallowable costs related to "maintenance coils," id. at 2, for which it was later found WVEO reimbursed Frontier $244,000 in "disallowed" costs, U.S. Dep't of Com. Nat'l Oceanic & Atmospheric Admin., Investigation Resolution Demand Letter (May 24, 2018), ECF No. 206-5.

Ultimately, the National Oceanic and Atmospheric Administration, on behalf of the National Telecommunications and Information Administration ("NTIA"), established these items as debts of $4,705,000 and $244,200 owed by the WVEO to the United States, totaling $4,949,200. See ECF Nos. 206-2 through -6. The State of West Virginia has agreed to pay the amounts owed. See ECF No. 185 at 2.

The legal authorities and criteria under which the OIG conducted its investigation were not based on fraud, but rather on whether certain costs were "allowable," which turned on standards such as "reasonable" or "necessary." See OIG Report at 5-6, supra. In other words, the OIG did not investigate through the lens of fraud. See id. at 13, 16.

On November 5, 2021, Citynet moved for an award of a portion of the amount recovered by the United States from the WVEO, which was $4,949,200. Citynet Mot. for Award, ECF No. 206. The FCA provides that a relator is entitled to a variable

5

share of the proceeds of an FCA suit. Cook County v. United States ex rel. Chandler, 538 U.S. 119, 123, 123 n.2 (2003).

## II. Standard of Review

"Matters of statutory construction present questions of law . . . ." Sijapati v. Boente, 848 F.3d 210, 214 (4th Cir. 2017) (quoting Hosh v. Lucero, 680 F.3d 375, 378 (4th Cir. 2012)).

## III. Discussion

The FCA is an anti-fraud statute aimed at those who submit to the United States "false claims" for payment. See 31 U.S.C. §§ 3729-3733. "The starting point for any issue of statutory interpretation . . . is the language of the statute itself." Ignacio v. United States, 674 F.3d 252, 254 (4th Cir. 2012) (alternation in original). The court must turn first to the statutory text, where the analysis ends if the language is plain and unambiguous. Id.; see also United States v. Lehman, 225 F.3d 426, 428 (4th Cir. 2000) ("A fundamental canon of statutory construction requires that unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning." (quotation marks omitted)). If,

however, the statute is ambiguous, the court may consider other means of interpretation such as legislative history. Ignacio, 674 F.3d at 255-56.

Section 3729 imposes liability upon "any person who," inter alia, "(A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; (B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim; [or] (C) conspires to commit a violation of" section 3729. Id. § 3729(a)(A)-(C). Section 3730(b) allows relators to bring an FCA suit. See id. § 3730(b). Specifically, section 3730(b)(1) empowers "[a] person [to] bring a civil action for a violation of section 3729 for the person and for the United States Government" and further provides that "[t]he action shall be brought in the name of the Government." Id. § 3730(b)(1).

Once a qui tam complaint is filed, the United States "may elect to intervene and proceed with the action," id. §§ 3730(b)(2), or decline to intervene and allow the "person who initiated the action . . . the right to conduct the action," id. § 3730(c)(3). Even if the United States declines to intervene initially, it retains the right "to intervene at a later date upon a showing of good cause." Id. § 3730(c)(3). The United States also retains the right to settle the action

"notwithstanding the objections of the" relator so long as "the proposed settlement is fair, adequate, and reasonable." Id. § 3730(c)(2)(B). Depending on whether the United States intervenes, the relator is entitled to a relator's share of fifteen to thirty percent of the United States' recovery. See 31 U.S.C. §§ 3730(d)(1), (d)(2).

Section 3730(c)(5) preserves a relator's rights, including the right to a relator's share, United States ex rel. Bledsoe v. Cmty. Health Sys., Inc., 342 F.3d 634, 647-49 (6th Cir. 2003), when the United States "pursue[s] its claim through any alternate remedy":

> Notwithstanding subsection (b), the Government may elect to pursue its claim through any alternate remedy available to the Government, including any administrative proceeding to determine a civil money penalty. If any such alternate remedy is pursued in another proceeding, the person initiating the action shall have the same rights in such proceeding as such person would have had if the action had continued under this section.

31 U.S.C. § 3730(c)(5).

Citynet argues that the United States' recovery through the administrative investigation of the WVEO is an "alternate remedy" under section 3730(c)(5) to which it is entitled a relator's share under the FCA. Citynet Mot. for Award 5-6. Citynet notes that its qui tam complaint sparked the United States' investigation and that the facts underlying the

United States' recovery are enveloped by the allegedly fraudulent conduct outlined in Citynet's complaint, therefore making it an "alternate remedy" to intervening in Citynet's FCA suit. Id. at 5-6. The United States responds that a non-fraud recovery is not an "alternate remedy" to the fraud-based FCA, see United States Resp. 10-13, and that Citynet is not entitled to a relator's share of a recovery against a state entity, against which Citynet would have no viable action under the FCA, see id. at 13-14.

The court notes that there is a circuit split concerning whether a non-fraud recovery is an "alternate remedy" to which a relator is entitled a share. Compare United States v. Novo A/S, 5 F.4th 47 (D.C. Cir. 2021) (relator not entitled to share), with United States ex rel. Barajas v. United States, 258 F.3d 1004 (9th Cir. 2001) (relator entitled to share). However, the court does not need to wade into that debate inasmuch as Citynet is not entitled to a share of the United States' recovery against a state entity, as explained below.

A relator's share is contingent upon, inter alia, the validity of the qui tam claim. United States ex rel. Newell v. City of St. Paul, 728 F.3d 791, 799 (8th Cir. 2013); United States ex rel. Hefner v. Hackensack Univ. Med. Ctr., 495 F.3d 103, 112 (3d Cir. 2007); United States ex rel. Godfrey v. KBR,

9

Inc., 360 F. App'x 407, 412-13 (4th Cir. 2010). According to the Supreme Court's decision in Stevens, states and state entities are not "person[s]" amenable to suit under the text of the FCA. 529 U.S. at 787-88;[4] see also United States ex rel. Oberg v. Ky. Higher Educ. Student Loan Corp., 681 F.3d 575, 578 (4th Cir. 2012) (discussing Stevens). See generally 31 U.S.C. § 3729(a) (imposing liability against "any person who" violates the FCA). Thus, if a relator files a qui tam complaint against a state or state entity, then the relator is not entitled to a relator's share of the government's settlement with such state or state entity inasmuch as the qui tam complaint against a state or state entity is invalid. Donald v. Univ. of Cal. Bd. of Regents, 329 F.3d 1040, 1044 (9th Cir. 2003) ("[T]he Court's holding in Stevens . . . forecloses the relators' . . . claim to a share of the proceeds from the government's settlement with [a state entity]."); United States ex rel. Adrian v. Regents of Univ. of Cal., 337 F. App'x 379, 381 (5th Cir. 2009) ("Because . . . [the relator] did not have a valid qui tam claim against the [state entity], . . . he was not entitled to share in the proceeds of the Settlement . . . .").

---

[4] In addition to the Supreme Court's holding concerning the text of the FCA, the Supreme Court noted, but did not decide, that the Eleventh Amendment also probably bars a relator's qui tam suit against a state or state entity in federal court. Stevens, 529 U.S. at 787.

The United States further argues that the FCA prohibits a relator's share where, as in this case, the relator files a valid qui tam complaint against a "person," but the government obtains its alternate remedy against a state or state entity. See United States Resp. 13-14. The United States contends that "because Citynet could not bring an FCA claim against the [WVEO], it has no right to a share of proceeds recovered from the [WVEO]" even if its FCA claims against Frontier are valid. Id. at 14. In support, the United States cites the Northern District of Georgia's decision in United States ex rel. Battle v. Board of Regents of the State of Georgia, which is in accord with the United States' argument. No. CIVA 100CV-1637-TWT, 2005 WL 4880633, at *7 (N.D. Ga. Feb. 10, 2005), aff'd on other grounds by 468 F.3d 755 (11th Cir. 2006). Battle appears to be the only decision directly addressing this issue.

Citynet responds that its "rights in [the United States'] alternate remedy are the 'same rights' it would have had if the United States intervened and 'continued under this section.'" Citynet Reply 9 (quoting 31 U.S.C. § 3730(c)(5)). Citynet references the Fourth Circuit's decision in United States ex rel. LaCorte v. Wagner, in which the Fourth Circuit held that "Section 3730(c)(5) simply preserves the rights of the

11

original qui tam plaintiffs when the government resorts to an alternate remedy in place of the original action." 185 F.3d 188, 191 (4th Cir. 1999). Citynet contends that under LaCorte, its right to a relator's share is "preserve[d]" regardless of who the United States pursues for its alternate remedy. See Citynet Reply 9-10.

The court is persuaded by the view of the United States and the district court in Battle. Under the FCA, a relator does not have a valid qui tam claim against a state or state entity and could not share in the proceeds of an FCA settlement with a state or state entity. Section 3730(c)(5) does not alter that rule when the United States pursues a state or state entity in an alternate proceeding. Rather, section 3730(c)(5) provides that a relator "ha[s] the same rights in such [alternate] proceeding as [it] would have had if the action had continued under [the FCA];" that is, had the claim against the state or state entity proceeded under the FCA. Inasmuch as Citynet does not have a valid qui tam claim against the WVEO, Citynet is not entitled to a relator's share of the United States' alternate remedy through its non-fraud claim against the WVEO.

## IV. Conclusion

For the foregoing reasons, it is ORDERED that Citynet's motion for award of fees be, and hereby is, denied.

The Clerk is requested to transmit copies of this memorandum opinion and order to all counsel of record and any unrepresented parties.

ENTER: September 8, 2022

_____
John T. Copenhaver, Jr.
Senior United States District Judge