# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| **CITYNET, LLC**, on behalf of the United States of America, ) ) ) | |
| Plaintiff/Relator, ) ) | Civil Action No.: 2:14-CV-15947 |
| v. ) ) | |
| **FRONTIER WEST VIRGINIA INC.**, a West Virginia corporation, **KENNETH ARNDT**, individually, **DANA WALDO**, Individually, **MARK McKENZIE,** Individually, ) ) ) ) ) ) ) | Judge: Copenhaver |
| Defendants. ) | |

## CITYNET, LLC'S MEMORANDUM OF LAW
## IN SUPPORT OF MOTION TO ENFORCE SETTLEMENT

Everyone in this case agrees that the parties entered a settlement. The parties stated the terms of that settlement at the December 6, 2022 Final Settlement Conference. And those terms are simple. Frontier West Virginia, Inc. agreed to pay $14,000,000.00, in new consideration, to resolve the False Claims Act claims and $3,750,000.00 in attorney fees and costs. All told, the parties understood that the $14,000,000.00 amount represented an effective resolution of the False Claims Act claims for $18,949,200.00, because it accounted for the recovery by the United States in separate administrative proceedings. Citynet agreed, subject to the consent of the United States Government, that the claims against the Frontier Defendants[1] would be dismissed. Now, at the eleventh hour, the Frontier Defendants want to change that agreement by inserting terms to which the parties never agreed and refusing to include language that reflect the federal government's—and the parties'—understanding of the settlement.

---

[1] The Frontier Defendants are Frontier West Virginia, Inc., Kenneth Arndt, Dana Waldo and Mark McKenzie.

1

First, the Frontier Defendants insist on delaying payment of the settlement funds until after this Court rules on Frontier West Virginia Inc.'s Motion for Partial Vacation of Summary Judgment Order [ECF #578] instead of paying upon the United States' consent to dismissal of the action and final dismissal by the Court. Further, they insist on the inclusion of an overly restrictive confidentiality/non-disparagement clause—and they insist that this clause be included despite the fact that the terms of the settlement have been announced without objection in open court. Citynet agreed to neither of these terms. The Frontier Defendants cannot dispute this. They were given the opportunity to state the terms of the agreement on the record at the Final Settlement Conference. They did not. Their failure is no accident: Citynet, of course, would have objected had the Frontier Defendants asserted these unagreed-upon terms were part of the settlement agreement.

After the Final Settlement Conference, Citynet worked to ensure the settlement could be finalized promptly. The United States has represented that it will consent to the dismissal of the case based on the settlement agreement that reflects the settlement terms negotiated by the parties. The Frontier Defendants refused to sign it. The stay in this case has been lifted, and Citynet can delay no longer. This case should be resolved—and it should have been resolved weeks ago. Citynet did not agree to uncertainty, delay, and an ever-changing array of unagreed upon terms. It agreed to prompt settlement once it obtained government consent to dismissal. It obtained the government's consent to dismissal based on the settlement terms as set forth in the drafts of the settlement agreements sent to counsel for the Frontier Defendants on January 20, 2023. Yet, the Frontier Defendants refuse to effectuate the settlement the parties agreed upon. Accordingly, because the Frontier Defendants refused to agree to a settlement agreement that the federal government has already approved and that accurately reflects the parties' agreed-upon settlement terms, Citynet respectfully asks that this Court to enter judgment, direct Frontier to sign the

settlement agreement that Citynet transmitted to Frontier,[2] and order the parties to conclude the settlement per the terms of that Agreement.[3]

## FACTUAL AND PROCEDURAL HISTORY

Citynet commenced this case, under seal, against the Frontier Defendants, Jimmy Gianato, Gale Given, and Kelley Goes on May 7, 2014. [ECF No. 1]. Citynet alleged the Defendants violated various provisions of the False Claims Act, 31 U.S.C. § 3729 *et seq.*, related to costs billed by the Executive Office of the State of West Virginia and the Frontier Defendants pursuant to a federal BTOP grant. *Id.* The United States ultimately declined to intervene in this matter, and the Complaint was unsealed on June 28, 2016. [ECF No. 28]. Citynet later filed an Amended Complaint on July 18, 2016. [ECF No. 30].

Despite declining to intervene, the United States' Office of the Inspector General investigated the Executive Office of the State of West Virginia and issued a report. The National Oceanic and Atmospheric Administration ("NOAA") demanded repayment from WVEO of impermissible costs identified in the OIG's report. [ECF No. 499-1]. The United States recovered

---

[2] Citynet has already signed its part of the settlement agreement, attached hereto as **Exhibit A**. Citynet will provide an executed agreement regarding attorneys' fees at the direction of the Court.

[3] Per the Settlement Agreement, the parties will:

> Upon the United States' receipt of the payment described in Paragraph 1, above, Relator and the Frontier Defendants shall promptly sign and file in the Civil Action a Joint Stipulation of Dismissal of the Civil Action, as it pertains to the Frontier Defendants, pursuant to Rule 41(a) and the terms and conditions of this Settlement Agreement. Upon entry of the Joint Stipulation of Dismissal , the Relator and the Frontier Defendants anticipate that the United States will file a consent to dismissal pursuant to 31 U.S.C. § 3730(b)(1), which shall consent to the dismissal of Relator's claims against the Frontier Defendants as to the Covered Conduct and pursuant to the terms and conditions of this Agreement, with prejudice.

*See* **Ex. G** at ¶ 6.

$4,949,200: $4,705,000 for invoice markup fees and indirect loadings charges and $244,200 for excess maintenance coil. *Id.*; [ECF No. 499-7].

Following extensive discovery and during the dispositive motion briefing, the parties began discussing a potential settlement of this matter. Throughout the course of those discussions, the Frontier Defendants made clear that their settlement position was in consideration of full set-off of the monies paid by the State of West Virginia. The Frontier Defendants' initial offer of $9,898,400.00 conveyed on June 28, 2022 explicitly provided "this figure equals the total amount of money the State repaid the [federal government] multiplied by two." June 28, 2022 Email from David Fenwick to Benjamin Bailey and Rebecca Pomeroy, attached hereto as **Exhibit B**. Citynet did not accept this offer.

On August 8, 2022, the parties attempted to mediate this case, but were unsuccessful.[4] [ECF No. 388]. In September 2022, the parties again engaged in settlement discussions. Again, the Frontier Defendants made clear that their settlement offers contemplated a set-off or "credit" for amounts previously recovered by the federal government. *See* September 14, 2022 Email from David Fenwick to Benjamin Bailey and Rebecca Pomeroy, attached hereto as **Exhibit C**. Though settlement discussions continued through September, October and November, the parties were not successful in reaching an agreement.

Following the initial Final Settlement Conference on December 5, 2022, where the Court orally ordered Citynet to prepare a revised version of Exhibit J to its motion for summary judgment

---

[4] On August 29, 2022, Citynet reached a settlement with the State Defendants and informed the Court of this development. [ECF No. 438].

reflecting the hidden loadings charges on the Frontier invoices [ECF No. 569], the parties again commenced settlement discussions. The parties ultimately agreed to settle this matter.

The final agreement to settle occurred immediately prior to the Final Settlement Conference set for December 6, 2022. At that time, the parties met outside the courtroom, and they reached an agreement on the key terms of settlement. Citynet's counsel, Benjamin Bailey, Rebecca Pomeroy, Christopher Smith, and Elizabeth Stryker, and its President and CEO, James R.J. Martin, II, and a Senior Vice President, Christopher Morris, were present in person for these negotiations. *See* Transcript from December 6, 2022 Final Settlement Conference, attached hereto as **Exhibit D**. Likewise, the Frontier Defendants' counsel, J. David Fenwick, Richard "Ky" Owen, Diane Sullivan, Jack Nolan, and Lucas White were present, along with Frontier's Senior Vice President, Associate General Counsel and Chief Compliance Officer, Paul Garcia. *Id.* Defendant Mark McKenzie's additional counsel, Isaac Forman and J. Zak Ritchie were also present in person. *Id.*

Following lengthy discussions, regarding the general terms of the settlement, the parties finally reached an agreement. After alerting the Court, the parties verbally described the terms of the settlement on the record:

> MS. POMEROY: Your Honor, these parties have worked out an agreement in principle. However, given the nature of this case, we've been advised by the Department of Justice in order to dismiss the case that we need to obtain formal consent to the terms that we've worked out amongst us.
>
> THE COURT: I understand that part, that you've got to have the United States' approval.
>
> \*\*\*
>
> THE COURT: What I'm interested in is the agreement itself and whether you have one, in fact, or not?
>
> MS. POMEROY: To the pertinent terms that we need, yes. We – the United States needs 45 to 60 days to do what it needs to do to consent

5

> to those terms. And we would ask the Court for that additional time in order to do that.
> But I think both counsel for the defendants and counsel for Citynet, as to those parties, we agree that we have a resolution to this case.
>
> \*\*\*
>
> MR. BAILEY: . . . the material terms of the agreement are that we settle the False Claims Act claims in this case against all defendants for – all the Frontier defendants for $14 million. We settle the claim for fees and costs for $3,750,000. And those are the material terms.

**Ex. D**, at 3:16-4:25.

Citynet further explained to the Court that the $14 million figure included civil penalties, although there was not a sum specifically allotted for it, and that the terms had been discussed with the United States. *Id.* at 5:1-15. Citynet also confirmed that the $14 million settlement, plus the $3,750,000 for fees and costs, would resolve the case as to Defendants McKenzie, Waldo, Arndt, and Frontier. *Id.* at 5:19-6:6. The Frontier Defendants' counsel, Diane Sullivan, confirmed this agreement on the record:

> THE COURT: So, Ms. Sullivan, is that your agreement?
>
> MS. SULLIVAN: Your Honor, that's the agreement.
>
> THE COURT: Very good.
>
> \*\*\*
>
> Well, congratulations on your settlement.

*Id.* at 6:7-9; 8:1.

Later, on December 6, 2022, Paul Garcia emailed Citynet's counsel, Ben Bailey, to thank him for his efforts on achieving settlement. Mr. Garcia stated that "Frontier will now work with DOJ to make sure they will agree to, or at a minimum[,] not oppose, vacatur of the summary judgment ruling on FBO charges, which you know is an important term for us, as is the lack of

6

press release/publicity about the settlement. Thank you for your agreement/agnosticism on those points." December 6, 2022 Email from Garcia to Bailey, attached hereto as **Exhibit E**.

Citynet immediately set about attempting to effectuate the parties' settlement, and on January 20, 2023, Rebecca Pomeroy emailed counsel for the Frontier Defendants and attached two draft releases that had been reviewed by the United States on January 17, 2023. January 20, 2023 Email from Pomeroy to Fenwick et al., attached hereto as **Exhibit F**, with draft releases attached as **Exhibits G** and **H**, respectively. Counsel for Frontier did not respond to that email. Indeed, counsel for Frontier did not respond until February 2, 2023, when Citynet sent a second follow-up email. When counsel responded, he provided no meaningful update, and merely stated that he needed some additional "direction/instruction from Frontier and possibly some clarification from the Court." February 14, 2023 Email Thread, attached hereto as **Exhibit I**.

On February 6, 2023, Frontier finally returned its proposed edits to the draft settlement documents. *See* February 6, 2023 Email from Fenwick to Pomeroy, attached hereto as **Exhibit J**, and edited releases attached as **Exhibits K** and **L**, respectively. These edits included three major changes to the document. First, Frontier proposed that payment be issued only after the Court ruled on Frontier's pending motion to vacate. Second, Frontier included an overly broad confidentiality clause that the parties did not agree to, and the United States will not agree to for public policy reasons (and, in any event, Citynet could not bind the United States because the United States is not a signatory). Finally, the Frontier Defendants struck a provision recognizing that the settlement considered the setoff Frontier contended it was entitled to based on the federal government's administrative recovery in separate proceedings.

On February 8, 2023, Ms. Pomeroy returned additional changes to the settlement release. *See* February 8, 2023 Email from Pomeroy to Fenwick et al., attached hereto as **Exhibit M**, with

7

edited release attached as **Exhibit N**. Ms. Pomeroy returned additional edits to the attorney's fees and cost release on February 10, 2023. *See* February 10, 2023 Email from Pomeroy to Fenwick et al., attached hereto as **Exhibit O**, with release attached as **Exhibit P**.

Mr. Fenwick responded on February 10, 2023, and stated that he had reviewed and provided his thoughts and comments to Frontier regarding the current drafts. **Ex. I**. Ms. Pomeroy responded on February 12, 2023, and reviewed the parties' history of edits to the releases and the parties' agreement. *Id.* Ms. Pomeroy specifically noted that the "additions [Frontier] inserted were not part of any discussion prior to the agreement being reached." *Id.*

Mr. Fenwick responded on February 14, 2023, with additional comments to the draft settlement releases provided on February 8 and 10. *Id.*; Edited Draft Releases attached hereto as **Exhibits Q** and **R**. At that time, the Frontier Defendants continued to maintain that the inclusion of terms delaying payment of the settlement funds until a ruling on their motion and a confidentiality/non-disparagement clause were appropriate. Further, the Frontier Defendants represented that the set-off language was extraneous, but recognizing such language may be important to Citynet, they would consider including it if Citynet would agree to the inclusion of the terms the Frontier Defendants wanted to include but the parties did not agree to prior to the settlement.

On February 15, 2023, Benjamin Bailey emailed Frontier's counsel in a final attempt to resolve this matter without Court intervention. February 15, 2023 Email from Bailey to Fenwick, attached hereto as **Exhibit S**. A proposed draft press release was attached to the message. *See* Draft Press Release, attached hereto as **Exhibit T**. Unfortunately, the parties are at an impasse and Citynet is compelled to move to enforce the settlement.

8

**LEGAL STANDARD**

Once a settlement agreement is reached, a district court possesses "the inherent authority to enforce a settlement agreement and to enter judgment based on an agreement without a plenary hearing." *Petty v. The Timken Corp.*, 849 F.2d 130, 132 (4th Cir. 1988). "[T]o exercise its inherent power to enforce a settlement agreement, a district court (1) must find that the parties reached a complete agreement and (2) must be able to determine its terms and conditions." *Hensley v. Alcon Laboratories, Inc.*, 277 F.3d 535, 540-41 (4th Cir. 2002). "Thus, if an agreement for complete settlement of the underlying litigation, or part of it, has been reached and its terms and conditions can be determined, the court may enforce the agreement summarily as long as the excuse for nonperformance of the agreement is comparatively insubstantial." *Id.* at 540 (internal quotations omitted). "'[H]aving second thoughts about the results of a valid settlement agreement does not justify setting aside an otherwise valid agreement.'" *Id.* (quoting *Young v. FDIC*, 103 F.3d 1180, 1195 (4th Cir. 1997)). Although resolution of a motion to enforce settlement draws on standard contract principles, it may be accomplished within the context of the underlying litigation without the need for a new complaint. *Hensley v. Alcon Laboratories, Inc.*, 277 F.3d 535, 540 (4th Cir. 2002).

"A settlement agreement made in open court . . . is a valid, enforceable agreement and need not be reduced to writing." *U.S. ex rel. McDermitt, Inc. v. Centex-Simpson Const. Co.*, 34 F.Supp.2d 397, 399 (N.D. W. Va. 1999), *aff'd sub nom. United States v. Centex-Simpson Const.*, 203 F.3d 824 (4th Cir. 2000) (citing *Petty*, 849 F.2d at 133 and *Wilson v. Wilson*, 46 F.3d 660, 664 (7th Cir. 1995) (enforcing settlement agreement made in open court)). "A party who knowingly

and voluntarily settled all claims before the court cannot later avoid the agreement by contesting ancillary terms of the agreement." *McDermitt*, 34 F.Supp.2d at 400.

"Ordinarily, when there is a factual dispute as to whether a settlement occurred, the court must conduct an evidentiary hearing. *See Hensley*, 277 F.3d at 541 (citing *Ozyagcilar v. Davis*, 701 F.2d 306, 308 n. * (4th Cir. 1983)). "No hearing is necessary, however, when the settlement at issue occurred in open court." *Young v. Lacy*, No. CV 1:17-03633, 2020 WL 6471034, at *2 (S.D. W. Va. Nov. 3, 2020), *aff'd*, 848 F. App'x 144 (4th Cir. 2021) (granting motion to enforce settlement agreement); *see also Topiwala v. Wessell*, 509 F. App'x 184, 187 (4th Cir. 2013) (explaining that factual challenge to settlement must be plausible to merit evidentiary hearing); *Doi v. Halekulani Corp.*, 276 F.3d 1131, 1139 (9th Cir. 2002) ("Thus, there was no need for an evidentiary hearing on whether an agreement existed, or what its terms were: the parties dispelled any such questions in open court.").

## ARGUMENT

There is no dispute that the parties settled this case. And there is no dispute as to the key terms of that settlement. Frontier agreed to pay $14,000,000.00, in new consideration, to resolve the False Claims Act claims and $3,750,000.00 in attorney fees and costs. Those payments accounted for the government's prior recovery of $4,949,200.00. The parties never conditioned payment on this Court's ruling on a motion for vacatur, and the parties never agreed to a near limitless confidentiality clause. Despite this, the Frontier Defendants refused to execute the settlement unless those unagreed-to provisions are included. But they cannot foist terms that the parties never agreed to on Citynet, and they should be held to the terms on which the parties agreed. Indeed, case law is clear: the Court can and should enforce the settlement that the parties agreed

10

to and reduce the same to judgment. Similarly, it should reject the Frontier Defendants' attempts to include terms that the parties never agreed upon in the settlement.

### A. The Parties Agreed To An Enforceable Settlement.

No one contests that the parties settled this case. And the terms of that settlement were simple. Citynet dismisses its claims, subject to government approval, and Frontier pays $14,000,000, in new consideration, to resolve the False Claims Act claims and $3,750,000 in attorney's fees. That settlement, per the parties' prior discussions and positions taken by the Frontier Defendants, also unquestionably contemplated that the amount paid for the False Claims Act claims was in consideration of, and accounted for, the $4,949,200.00 previously paid to the NTIA and NIST. Indeed, beginning in June 2022, the Frontier Defendants tied their settlement offers to the amount recovered in that proceeding. *See* **Ex. B** ("Frontier is willing to settle the case for Nine Million Eight Hundred and Ninety-Eight Thousand Dollars ($9,898,000.00) . . . .the total amount of money the State repaid [the United States] multiplied by two.")  and **Ex. C** ("[Y]our number does not credit the State's payment of $465,000, as it should. . . . We estimate this category of potential exposure here at $3,958,900 . . . [t]his includes credit for the State's payment of $244,000.").

Now, Frontier objects to including the following language in the settlement agreement:

> E. During the course of litigation, the United States, through the National Oceanic and Atmospheric Administration ("NOAA") initiated a collection action against the State of West Virginia to recoup $4,949,200.00 ("the set-off amount") paid to the Frontier Defendants for impermissible Loadings and FBO charges, as well as for maintenance coils deemed excessive.
>
> **Ex. Q** at 2.

11

In addition, the Frontier Defendants object to the inclusion of language that explains that the $14,000,000.00 is "new consideration, beyond the amount previously paid and defined as the set-off amount described above." *Id.* at 3.

It is not clear why—despite repeatedly hinging their negotiating position on a setoff to account for the government's separate recovery—the Frontier Defendants refused to include this language, language which the United States approved and which does alter the settlement terms in any way. Undoubtedly, had this case been tried to verdict, Frontier would have moved for a set-off to account for this separate recovery. Therefore, given Frontier's repeated assertions that it was negotiating from the position that it was entitled to a setoff, including language in the settlement agreement or a judgment order that the $14,000,000.00 represents an effective resolution at $18,949,200.00 is more than appropriate. Importantly, the proposed language reflects Frontier's persistent bargaining position in its discussions with Citynet. Indeed, the only reason that it refuses to include the language is because Frontier believes it is "extraneous." Of course, it is not. It accurately reflects a position that Frontier consistently bargained from, and a position that the government considered when authorizing Citynet to transmit the settlement terms Citynet sent to Frontier on January 20, 2023. Citynet understands that this total amount of the effective resolution was also a consideration in the Government's approval of the amount of the attorney fee settlement with Frontier, and a component of their ultimate decision about a relator's share of the recovery for Citynet.

Because the parties clearly reached a settlement, this Court is authorized to use its inherent authority to reduce the settlement to judgment. *Briones v. JNS Const. Servs., LLC*, Civil Action No. 08-cv-00461-DME-CBS, 2009 WL 943767 (D. Colo. Apr. 6, 2009); *Above the Ceiling, LLC v. Western Architectural Servs.*, Case No. 2:15-cv-01766-JAD-GWF, 2019 WL 3210598 (D. Nev.

June 28, 2019), *report and recommendation adopted in* 2019 WL 3208646 (D. Nev. July 16, 2019). Here, the parties in open court put the material terms of their settlement on the record. Further, the record reflects that the material terms of the settlement contemplated and took into consideration the fact that the Frontier Defendants were taking advantage of a set-off of the money paid through the NOAA administrative action. And Citynet prepared a draft settlement agreement that reflects the parties' terms, submitted it to the United States for review, and received approval to transmit it to Frontier. Citynet then sent a settlement agreement reflecting all those terms to Frontier on January 20, 2023. Thus, the Court should enforce and reduce to judgment the parties' settlement that includes language accounting for the set-off the Frontier Defendants relied upon throughout the settlement discussions per the proposed order attached hereto as **Exhibit U**.

> **B. Frontier's Position that It Will not Pay the Parties' Settlement Until Its Motion to Vacate Is "Properly Adjudicated" Was Not Contemplated By the Parties and Is Wrongfully Stalling Settlement.**

The stay in this case has been lifted. Citynet received approval from the United States to transmit Citynet's draft settlement agreement that reflects the parties' terms, and Citynet sent it o Frontier on January 20, 2023. Despite this, the Frontier Defendants insist that they must be permitted to delay payment of the settlement until Frontier's Motion for Vacatur is "properly adjudicated," whatever that means. But Citynet was never asked to, and never agreed that payment of the settlement proceeds—either for the False Claims Act settlement or attorney fees settlement—could be delayed until the Motion for Vacatur was resolved—it merely agreed not to oppose Frontier's efforts to seek vacatur of this Court's finding that Frontier defrauded the federal government by using grant money to pay fictitious FBO charges. This Court must foreclose Frontier's stall tactics. Citynet obtained approval from the government to submit a settlement

agreement to Frontier reflecting the parties' original agreement. Frontier cannot change those terms now.

"Having second thoughts about the results of a valid settlement agreement does not justify setting aside an otherwise valid agreement." *Young v. FDIC*, 103 F.3d 1180, 1195 (4th Cir. 1997). "A party who knowingly and voluntarily settled all claims before the court cannot later avoid the agreement by contesting ancillary terms of the agreement." *McDermitt*, 34 F.Supp.2d at 400.

In its motion for partial vacatur, Frontier seeks this Court's absolution from its ruling that Frontier violated the False Claims Act as to Count VII. [ECF No. 578]. Frontier represents that the parties met and conferred and that Citynet does not oppose the motion. *Id.* at 1. Citynet agrees that the parties met and conferred and that Citynet agreed to stand silent while Frontier sought its relief from the Court's ruling. What Citynet did not agree to, however, was that its settlement with Frontier would only be effective after "the issuance of a ruling by the Court on Frontier's Motion to Vacate." **Ex. Q** at ¶ 16. Alarmingly, counsel for the Frontier Defendants have, in oral communications to Citynet's counsel, made it clear that Frontier would not pay out its settlement absent a "proper" adjudication from the Court on its motion to vacate. *See* **Ex. S.** This was neither discussed nor contemplated by the parties when they reached their settlement.

The settlement was not conditioned on the Court's ruling—and the parties never contemplated that it was. Citynet simply agreed not to oppose Frontier's Motion. The parties never discussed timing nor having Frontier's motion "properly adjudicated" prior to Frontier paying the agreed-upon settlement funds. And if Frontier thought that this timing was a term to the agreement,

14

it could have put that on the record at the Final Settlement Conference. It did not—because it was never a term to the parties' agreement.

Indeed, Citynet would never agree to make the timing of the settlement contingent on this Court's ruling on an at-the-time unfiled Motion. Citynet settled this case to resolve it *now*. Not at some undefined point in the future. More troubling than the Frontier's newfound position on the timing of the settlement and payment of settlement funds are its suggestion that it may use this Court's ruling on the Motion for Vacatur to attempt to evade settlement altogether. Indeed, Frontier's counsel repeatedly stated that it will not agree to pay the settlement funds if the Court denied Frontier's motion. Although Frontier's current draft of the settlement agreement appears to walk back that position, Citynet certainly did not hinge settlement of this case on whether this Court granted Frontier's Motion for Vacatur.

Frontier's newfound position is untenable. Frontier may not like this Court's ruling on summary judgment. And it may want this Court to rule on the Motion for Vacatur prior to paying the settlement. But that was never part of the parties' settlement agreement, and it is a problem of Frontier's own making. The Frontier Defendants could have settled this case prior to this Court's ruling determining that Frontier defrauded the federal government. The Frontier Defendants

declined to do so. They bore the risk that the Court would grant Citynet's Motion. They are not now entitled to stall resolution of the parties' settlement so they can fight the results of the Motion.

### C. Frontier's Proposed Confidentiality Provision is Overly Restrictive and was not Part of the Agreement between the Parties.

The settlement of this case was announced in open court. Despite that, the Frontier Defendants insist that Citynet agree to an overbroad confidentiality clause the parties never agreed to. That position is absurd. Not only is it absurd, it is unlawful.

First, Citynet cannot agree to do anything on behalf of the United States because Citynet—not the United States—is the signatory to the contract. Citynet cannot agree to Frontier's proposed language that states, "The United States agrees that it will not disclose or publicize the resolution of this Civil Action except pursuant to a lawfully made FOIA request or as otherwise required by law" because Citynet cannot bind the United States. Beyond the fact that Citynet cannot create an obligation on behalf of the United States, the United States generally cannot agree to confidentiality provisions in settlement agreements:

> It is the policy of the Department of Justice that, in any civil matter in which the Department is representing the interest of the United States or its agencies, it will not enter into final settlement agreements or consent decrees that are subject to confidentiality provisions, nor will it seek or concur in the sealing of such documents. This policy flows from the principle of openness in government and is consistent with the Department's policies regarding openness in judicial proceedings and the Freedom of Information Act.
>
> There may be rare circumstances that warrant an exception to this general rule. In determining whether an exception is appropriate, any such circumstances must be considered in the context of the public's strong interest in knowing about the conduct of its Government and expenditure of its resources. The existence of such circumstances must be documented as part of the approval process, and any confidentiality provision must be drawn as narrowly as possible.

28 C.F.R. § 50.23(a), (b). *See also Goodeagle v. United States*, 145 Fed. Cl. 646, 651 (2019) (ordering settlement agreement to be filed on public docket where the Government failed to identify any special circumstances requiring confidentiality and because "the public's strong interest in public disclosure [won] the day.").

The original[5] clause stated, "All Parties to this Settlement Agreement consent to the United States' disclosure of this Agreement, and information about this Agreement, to the public." **Ex. Q** at ¶ 10. Frontier's revisions drastically change the provision, attempting to bind the non-signatory United States and running afoul of the regulation listed above:

> The United States agrees that it will not disclose or publicize the resolution of this Civil Action except pursuant to a lawfully made FOIA request or as otherwise required by law. Neither the Relator, its counsel, nor any of their representatives shall make any communications to any media or other public statements about the Civil Action or its resolution, including but not limited to any press releases or use in marketing (web site or otherwise), except as strictly necessary to comply with any specifically and legally required reporting requirements, and the Relator and its representative shall not lobby, address, or communicate with any governmental agencies or other public bodies regarding any matters related in any way to the allegations or claims in the Civil Action, or its resolution, for any purpose unless compelled by subpoena or other legal means to do so.

*Id.*

Citynet refrained from public discussion of the terms of the settlement while this case was stayed pending the United States' consent to settlement. **Ex. S**. But Citynet did not, and cannot, agree to refrain from discussing the final resolution of this matter. Broadband access is still an issue in West Virginia and remains a topic of public discussion, and Frontier, Citynet, and other parties in this industry will need to play a role in those discussions. Beyond that, the United States is not a signatory to the contract and, in any event, cannot agree to keep the resolution of this matter

---

[5] The United States reviewed and approved this language.

confidential because of the policy regarding openness in judicial proceedings and the Freedom of Information Act. 28 C.F.R. § 50.23(a), (b).

Citynet has proposed a joint public statement as a compromise, but Frontier has not responded. **Ex. T.** The parties never discussed the gag order Frontier now attempts to foist on Citynet. Therefore, Frontier is not entitled to include it in the settlement agreement. Accordingly, the Court should enforce the parties' settlement agreement.

### D. Citynet Seeks its Fees and Costs Incurred in Enforcing Settlement.

Attorneys' fees may be assessed against a party acting in bad faith. "Under the American rule, each party bears its own costs of litigation unless statutory authority exists for an award of attorneys' fees or an exception to the rule applies." *Williams v. Professional Transp. Inc.*, 294 F.3d 607, 614 (4th Cir. 2002). "One exception to the rule allows a district court to assess attorneys' fees against a losing party when it has acted in bad faith, vexatiously, or wantonly. *Id.* (citing *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 245-47 (1991)). In other words, "under its inherent powers, the district court has the authority to shift attorney's fees . . . in the extraordinary circumstances where bad faith or abuse can form a basis for doing so." *Hensley*, 277 F.3d at 543 (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991)).

The Frontier Defendants have acted in bad faith throughout Citynet's attempts to finalize the parties' settlement. Specifically, the Frontier Defendants insist that they will not finalize settlement absent the inclusion of a contingency and a confidentiality term that the parties did not agree to. Diane Sullivan, the Frontier Defendants' counsel, agreed with Citynet's counsel, on the record, that the material terms of the settlement were that the Frontier Defendants would pay $14 million, plus $3,750,000 for Citynet's attorneys' fees and costs, to settle the False Claims Act claims against the Frontier Defendants. The Frontier Defendants' unnecessary delay has strayed

beyond the sixty-day stay in this case, and *still* the Frontier Defendants refuse to finalize the settlement. Due to this inexcusable conduct, the Court should award Citynet its fees and costs in pursuing this motion to enforce.

## CONCLUSION

WHEREFORE, for the reasons set forth above, Citynet respectfully requests that this Court enforce its settlement with the Frontier Defendants, enter judgment, direct Frontier to sign the settlement agreement that the United States approved Citynet to transmit to Frontier, and order the parties to conclude the settlement per the terms of that Agreement.

.

Dated: February 17, 2023                                              **Respectfully submitted,**

**CITYNET, LLC,**

**Relator.**

*/s/Rebecca Pomeroy*
Benjamin L. Bailey (WVSB #200)
Rebecca Pomeroy (WVSB #8800)
Christopher D. Smith (WVSB #13050)
Elizabeth L. Stryker (WVSB #13270)
Bailey & Glasser LLP
209 Capitol Street
Charleston, WV 25301
(304) 345-6555
(304) 342-1110 *facsimile*

Nicholas S. Preservati (WVSB #8050)
Preservati Law Offices PLLC
P.O. Box 1431
Charleston, WV  25325
(304)-346-1431
(304)-346-1744 *facsimile*

## **CERTIFICATE OF SERVICE**

The undersigned counsel for Plaintiff does hereby certify that on this 17th day of February 2023, a true copy of the foregoing was served upon all counsel of record by utilizing the CM/ECF filing system.

*/s/Rebecca Pomeroy*
Rebecca Pomeroy (WVSB #8800)