UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

CITYNET, LLC, on behalf of
the United States of America,

          Plaintiff/Relator,

v.                                   Civil Action No. 2:14-cv-15947

FRONTIER WEST VIRGINIA, INC.,
a West Virginia corporation;
KENNETH ARNDT, individually;
DANA WALDO, individually;
MARK MCKENZIE, individually;
JIMMY GIANATO, individually;
and GALE GIVEN, individually,

          Defendants.


MEMORANDUM OPINION AND ORDER

          Pending is defendant Frontier West Virginia Inc.'s

("Frontier") motion for partial vacatur of summary judgment

order (ECF No. 578), filed January 19, 2023, with respect to

Count VII of the operative complaint insofar as Frontier was

found liable, which motion is unopposed by the plaintiff/relator

Citynet, LLC.


I. Background


          Citynet instituted this action on May 7, 2014, with

the filing of its qui tam complaint under the False Claims Act

("FCA"), 31 U.S.C. §§ 3729-3733.  ECF No. 1.  Pursuant to 31 U.S.C. § 3730(b)(2), Citynet's <u>qui tam</u> complaint was filed <u>in camera</u>, sealed, and served on the United States but not the defendants.  ECF Nos. 2-3.  The United States then moved for several extensions under 31 U.S.C. § 3730(b)(3) while it decided whether to intervene and conduct the action on its own behalf. <u>See</u> ECF Nos. 4-26.  On June 17, 2016, the United States declined to intervene, ECF No. 27, and on June 28, 2016, the <u>qui tam</u> complaint was unsealed, ECF No. 28.

On July 18, 2016, Citynet filed the first amended <u>qui tam</u> complaint.  First Am. Compl., ECF No. 30.  Therein, Citynet alleged that the Executive Office of West Virginia ("WVEO") received $126,323,296 in federal grant money from the American Recovery and Reinvestment Act's Broadband Technology Opportunities Program "to build a[n open-access] middle-mile [broadband internet] network" in West Virginia.  <u>Id.</u> ¶¶ 1-2.[1] Citynet averred that the WVEO and Frontier agreed that "Frontier would serve as a 'sub-recipient' of the grant to establish a middle-mile broadband network to over 1,000 points of interest

---

[1] "Middle mile" is a category of internet infrastructure comprising the fiber optic lines that link the larger "backbone" fiber optic lines to "last mile" lines that connect to the end consumer.  <u>See</u> Inquiry Concerning the Deployment of Advanced Telecommunications Capability, 15 FCC Rcd. 20913, 20922-23 (2000).

throughout West Virginia." Id. ¶ 71; see also id. ¶¶ 69-74. Citynet alleged that Frontier; Frontier employees and defendants Kenneth Arndt, Dana Waldo, and Mark McKenzie; and West Virginia state employees and defendants Gale Given and Jimmy Gianato, individually, defrauded the United States in connection with the grant application and implementation in violation of the FCA. Id. ¶¶ 3, 9-12, 14; see also id. ¶¶ 4-6 (providing additional summary information on the allegations against the defendants under the FCA).[2] Once the court ruled on the motions to dismiss, the case was stayed for two years while the state defendants unsuccessfully sought the protection of qualified immunity in an interlocutory appeal.

As relevant here, under Count VII of the amended complaint, Citynet alleged that Frontier billed Facility Build Out ("FBO") invoice processing costs of $465,000 to the grant despite a lack of documentation to support the costs and with knowledge that the costs were impermissible and unreflective of costs actually incurred. See id. ¶ 176; see also Citynet Mem. Supp. Mot. Summ. J., ECF No. 383 at 27-29. The parties filed cross-motions for summary judgment on Count VII, with Frontier's

---

[2] Citynet also filed suit against West Virginia state employee Kelly Goes. Citynet, with the United States' consent, voluntarily dismissed Goes from this action without prejudice. ECF Nos. 92, 93.

motion limited to the element of scienter.[3]  Frontier Mot. Summ.
J., ECF No. 380; Citynet Mot. Summ. J., ECF No. 382.

On September 8, 2022, the court entered a memorandum
opinion and order on the parties' cross-motions for summary
judgment.  Ord. Summ. J., ECF No. 465.  In that order, the court
provided an extensive recitation of the facts of this case, and,
as relevant here, granted summary judgment for Citynet with
regard to liability, but not damages, as to its Count VII claim
against Frontier under 31 U.S.C. § 3729(a)(1)(B) that the
Frontier defendants made or used a false record or statement
material to a false claim regarding FBO invoice processing costs
charged by Frontier and presented to the WVEO for payment with
grant funds.  Id. at 51-67.

The parties appeared on December 5, 2022, the eve of
the scheduled trial date, for a final settlement conference
before the court.  The court directed the parties to appear for
a continuation of that conference the following afternoon, at
which point the parties informed the court that they had reached

---

[3] Frontier's motion for summary judgment was joined by defendants
Arndt, McKenzie, and Waldo.  Because they do not join Frontier
in seeking vacatur of the court's order on that motion, the
court refers herein to that motion only as regards defendant
Frontier West Virginia, Inc. unless otherwise indicated.

a settlement, pending approval by the United States as required under the False Claims Act.  <u>See</u> ECF No. 576.

The court's summary judgment memorandum opinion and order doubtless played a pivotal role in inducing the blanket settlement reached by the parties in this action.  By virtue of the settlement, Frontier achieved a broad compromise with Citynet, an effect of which was the sacrifice by Frontier of the opportunity to appeal the court's finding of Frontier's Count VII liability that dealt with a relatively minor issue in relation to the whole case.

On January 19, 2023, Frontier filed the unopposed motion for partial vacatur of the court's summary judgment order, under Fed. R. Civ. P. 60(b)(6), which is presently before the court.  Frontier Mot. Vacatur, ECF No. 578.

## II. <u>Legal Standard</u>

"On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding[.]"  Fed. R. Civ. P. 60(b).  "Under Rule 60(b)(1), a party may seek relief based on 'mistake, inadvertence, surprise, or excusable neglect,'" while subsections (b)(2) through (b)(5) supply other grounds, and "Rule 60(b)(6) provides

a catchall for 'any other reason that justifies relief.'"  Kemp
v. United States, 142 S. Ct. 1856, 1861 (2022) (quoting Fed. R.
Civ. P. 60(b)).  "This last option is available only when Rules
60(b)(1) through (b)(5) are inapplicable." Id. (citing
Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847, 863
n.11 (1988)); see also United States v. Williams, 56 F.4th 366,
373 (4th Cir. 2023) ("the grounds for Rule 60(b)(6) are mutually
exclusive from the grounds of other Rule 60(b) motions").

        Where Rule 60(b)(6) applies, relief should be granted
only in "extraordinary circumstances."  Id.; McMellon v. United
States, 528 F. Supp. 2d 611, 613 (S.D. W. Va. 2007) (citing Reid
v. Angelone, 369 F.3d 363, 370 (4th Cir. 2004); Valero
Terrestrial Corp. v. Paige, 211 F.3d 112, 118 n.2 (4th Cir.
2000)).  Ultimately, a grant of vacatur under Rule 60(b)(6) is
discretionary.  Id.; Plaut v. Spendthrift Farm, Inc., 514 U.S.
211, 233–34 (1995).


                        III. Discussion


        With this motion for vacatur, Frontier urges the
court to vacate in part its memorandum opinion and order on the
parties' cross motions for summary judgment (ECF No. 465),
entered September 8, 2022.  In support of the motion, Frontier
advances several arguments that can be summarized as stating two

grounds for its requested relief: (1) the court's scienter finding on Count VII at summary judgment was legally erroneous,[4] and (2) equitable considerations weigh in favor of vacatur. The court will address each in turn.

As to the first ground, Frontier substantively restates its prior arguments in summary judgment briefing in the course of questioning the propriety of the court's determination that Citynet established the element of scienter on Count VII so as to avoid a jury question. See Frontier Mot. at 4-5. The court therefore considers whether an error in the court's reasoning, were the court to find one existed, would constitute extraordinary circumstances meriting vacatur.

Relief under Rule 60(b)(6) "is available only when Rules 60(b)(1) through (b)(5) are inapplicable." Kemp v. United States, 142 S. Ct. 1856, 1861 (2022). "Mistake" within the meaning of Rule 60(b)(1) "covers all mistakes of law made by a judge." Id. at 1862-63. Where a litigant's Rule 60(b) motion "boils down to an argument that the court made a mistake[] or . . . . inadvertently over-looked [an] argument[,]" it should . .

---

[4] Such contentions are ostensibly raised as part of Frontier's analysis in its motion for vacatur of the purported fact-bound nature of the court's ruling on Count VII, though it is apparent from the discussion that Frontier takes issue with the merits of the court's decision on Count VII. See Frontier Mot. at 4-5.

. invoke[] Rule 60(b)(1), not (b)(6)." <u>Blitch v. United States</u>, 39 F.4th 827, 834 (7th Cir. 2022) (applying <u>Kemp</u>).  Insofar as Frontier brings this motion for an alleged mistake of law under Rule 60(b)(6), when 60(b)(1) would be the correct avenue of relief, the court could not grant the relief sought on this basis, even were it persuaded, although it is not, that Frontier's memorandum articulates an error of law warranting the extraordinary relief of vacatur.  Therefore, the court does not consider Frontier's substantive arguments that the court erred by finding scienter as to the FBO invoice processing costs under Count VII entitling it to summary judgment.

Frontier's equitable arguments that extraordinary circumstances meriting relief exist can be summarized as: (1) the adverse judgment imposes significant undue prejudice on Frontier and (2) the court's summary judgment order holds minimal precedential value.  Frontier Mot. at 3.

Frontier contends that it would be prejudiced by "the weight of an unappealable summary judgment finding as to liability" in the event that it might possibly undertake at some unspecified future time to "enter the government contracts and public funding arenas." Frontier Mot. at 6.  Frontier acknowledges, correctly, that appeal would be precluded on account of the doctrine of mootness.  <u>See</u> <u>id.</u> at 2.

8

In general, "[m]ootness by reason of settlement does not justify vacatur[.]" U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship, 513 U.S. 18, 29 (1994); see also Valero Terrestrial Corp. v. Paige, 211 F.3d 112, 121 (4th Cir. 2000) (Bonner Mall considerations are "relevant to, and likewise largely determinative of, district court decisions on vacatur under Rule 60(b)(6)). However, vacatur is an equitable remedy such that "exceptional circumstances may conceivably counsel in favor of such a course." Bonner Mall, 513 U.S. at 29. The "voluntary, deliberate, free, and untrammeled choice not to appeal the decision of [a] district court granting . . . summary judgment" cannot alone justify relief under Rule 60(b)(6). Dowell v. State Farm Fire and Cas. Auto. Ins. Co., 993 F.2d 46, 48 (4th Cir. 1993) (citing Ackermann v. United States, 340 U.S. 193, 200 (1950)) (internal marks omitted).

As a defendant in this case, Frontier made a series of voluntary, deliberate, free, and untrammeled choices of trial strategy that rendered the summary judgment ruling on Count VII unappealable. After proceeding with this case to summary judgment, Frontier obtained judgment in its favor on Counts I-VI and IX, while Citynet obtained summary judgment against Frontier on liability as to Count VII, and the court allowed Count VIII and damages on Count VII to proceed to trial. See Ord. Summ. J.

at 71.   Thereafter, the summary judgment order was tested by two
parties to the litigation, McKenzie and Citynet, through motions
for reconsideration.[5]   See ECF Nos. 481, 499.   Perhaps as a
matter of strategy, Frontier chose not to seek reconsideration
of the summary judgment order on Count VII before this court,
although it did assiduously preserve its right to appeal the
ruling in five separate pre-trial filings with the court and
during the first day of the Final Settlement Conference on
December 5, 2022.   See ECF No. 471-1 at 3; ECF No. 520 at 17
n.6; ECF No. 530 at 2; ECF No. 530-1 at 2, 3; ECF No. 535 at 2;
ECF No. 571.   The availability of appeal was also directly
contemplated by Frontier during settlement negotiations.   See
Fenwick Email, Sept. 14, 2022, ECF No. 581-3 at 2; Garcia Decl.,
ECF No. 583-1 at ¶ 8.

        Until the time the parties informed the court of their
settlement of this matter on December 6, 2022, the ability of

---

[5] The court granted McKenzie's motion and revised its adverse
liability finding as to him on Count VII.   ECF No. 563 at 24.
At the time the parties notified the court of their settlement
of this matter on December 6, 2022, Citynet's motion for
reconsideration remained pending decision.
        Frontier incorrectly states that the court set aside the
summary judgment order as to defendant Arndt.   See Frontier Mot.
at 3.   As the record correctly reflects, the court's erroneous
clerical amendment of the summary judgment order with respect to
Arndt, ECF No. 467, was vacated, set aside, and held for naught
by subsequent order.   ECF No. 489.   Accordingly, the court's
summary judgment order stands unaltered as to Arndt.

Frontier to appeal the adverse summary judgment ruling on Count VII was preserved, seemingly well-understood, and a strategic matter for Frontier's contemplation when it arrived at a settlement with Citynet on the eve of trial.  Any foreclosure of appeal was of Frontier's own making by its consent to settle and therefore does not, without more, justify the vacatur that Frontier seeks by its motion.

Frontier asserts that the court's summary judgment order with respect to Count VII holds minimal precedential value because it is fact-specific, not dispositive in future litigation, and turns on a scienter standard that Frontier believed to be in flux due to the Supreme Court's grant of certiorari to address the issue.  In light of the Supreme Court's decision in that case, United States ex rel. Schutte v. SuperValu Inc., 598 U.S. 739 (2023), this last argument is unpersuasive.  In Schutte, the Supreme Court held that the FCA scienter standard depends on the knowledge and subjective belief of a defendant, rather than what an objectively reasonable person may have known or believed.  598 U.S. at 743, 748-49, 752.  This articulation of the FCA scienter standard accords with that applied by this court on Count VII at summary judgment, a decision that is amply supported by the evidence presented.  See Ord. Summ. J. at 60-65.

In any event, "[a]s always when federal courts contemplate equitable relief," they must "take account of the public interest."  <u>Bonner Mall</u>, 513 U.S. at 26.  "Judicial precedents are presumptively correct and valuable to the legal community as a whole . . . and should stand unless a court concludes that the public interest would be served by a vacatur."  <u>Id.</u> (quoting <u>Izumi Seimitsu Kogyo Kabushiki Kaisha v. U.S. Philips Corp.</u>, 510 U.S. 27, 40 (1993) (Stevens, J., dissenting)); <u>see also</u> <u>Valero</u>, 211 F.3d at 121.

The court's summary judgment order was the culmination of years of investigation and discovery, vigorous advocacy, and thousands of pages of exhibits and briefing submitted on Frontier and Citynet's cross-motions for summary judgment alone. This immense effort allowed for a thorough airing of the issues and an extensive, reasoned analysis of the parties' contentions. Under the reasoning of <u>Bonner Mall</u> and <u>Valero</u>, this judicial work product is presumptively valuable, and Frontier has failed to rebut that presumption.

Nevertheless, in addressing a motion under Rule 60(b)(6), a district court may grant vacatur in "'exceptional circumstances,' even where the considerations of relative fault and the public interest would otherwise counsel against

vacatur." <u>Valero</u>, 211 F.3d at 121 (quoting <u>Bonner Mall</u>, 513 U.S. at 29).

As the court's foregoing discussion reflects, the condition of fault counsels against vacatur.  Notwithstanding that, Frontier makes two points that merit the court's consideration of whether "exceptional circumstances" warranting vacatur exist.  First, Frontier points out the comparatively minor value of the fraudulent invoice processing costs for which the court found it liable, noting they total "approximately $465,000, or roughly one percent of the BTOP grant funds paid to Frontier and roughly one-third of one percent of the total grant funds."[6]  Frontier Mot. at 4.  Second, Frontier points out the severe consequences of that adverse fraud ruling for the company and its affiliates.  Namely, Frontier avers that "[i]n the event Frontier (or any affiliate) undertakes to procure a government contract or other public finding [sic, funding], the company would be saddled with an adverse ruling finding a violation of the False Claims Act."  <u>Id.</u> at 6.  In a subsequent filing on September 29, 2023 (ECF No. 594), Frontier supports this concern by reference to the federal regulation at 2 C.F.R. Part 180

---

[6] The court also notes that the entirety of the invoice processing costs of $465,000, had it been fully recovered as damages, would have equaled one-thirtieth of the settlement.

entitled "OBM Guidelines to Agencies on Governmentwide Debarment and Suspension (Nonprocurement)."

The court, like Frontier, finds troubling the immense incongruency in this case between the limited scale of the liability and the steep, wide-ranging consequences to Frontier and its affiliated concerns. In particular, the court observes that Frontier stands to suffer the material reputational consequences of False Claims Act liability upon a tiny fraction of the case to the same degree as if it had been liable for the case in its entirety. These consequences are serious because they are enduring, reputational, material, and affect related entities beyond just the defendant in this case. While Frontier must answer for the conduct and practices raised in the course of this litigation, the consequences here stretch far past the point of proportionate accountability, to the end that relative fault and the equitable considerations outlined above yield a public interest that is in equipoise.

In view of this gross asymmetry between the scale of liability and the weight of consequences, the court finds that, on the facts of this case, the exceedingly rare circumstances warranting vacatur are present. Accordingly, the court will grant Frontier's requested relief.

14

IV.  <u>Conclusion</u>

For the reasons set forth herein, it is ORDERED that
Frontier's motion for partial vacatur (ECF No. 578) of the
court's grant of summary judgment for Citynet on Count VII
against Frontier as to liability be, and hereby is, granted.  It
is further ORDERED that the court's summary judgment order (ECF
No. 465) as to Count VII in favor of Citynet against Frontier as
to liability be, and hereby is, VACATED.

The Clerk is requested to transmit copies of this
memorandum opinion and order to all counsel of record and any
unrepresented parties.

ENTER: November 7, 2023

John T. Copenhaver, Jr.
Senior United States District Judge